In re Carolyn Jeanne BOYER, Debtor.

Carolyn Jeanne BOYER, Movant,

v.

ITT FINANCIAL SERVICES a
Corporation, Respondent.

Bankruptcy No. 85–00250(SE).

United States Bankruptcy Court,
E.D. Missouri, E.D.

Jan. 21, 1986.

**154**

William H. Frye, Cape Girardeau, Mo., for debtor/movant.

Dan Finch, Cape Girardeau, Mo., for ITT Financial Services.

## MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

### BACKGROUND

On July 29, 1985, an order for relief was entered on the Debtor's voluntary Chapter 7 petition. On July 1, 1985, Debtor borrowed $2,423.56 from ITT Financial Services ("ITT"). In return, Debtor granted ITT a nonpossessory, nonpurchase-money security interest in the following collateral:

Wizard Push Lawn Mower
Two Gold Chains
Gold Earrings
Diamond Earrings
Gold Diamond Ring
Kodak Instamatic Camera
Two Soundesign Clock/Radio Telephones
Midland 19″ Color Portable TV
Soundesign Stereo System

On July 9, 1985, ITT duly perfected its security interest in the above collateral by filing its financing statement with the appropriate state authority.

Debtor claimed exemptions in the collateral under §§ 513.430(1), 513.430(2), R.S. Mo., and filed a motion to avoid ITT's lien, claiming it impaired her exemptions. ITT opposed Debtor's motion. Its opposition was not based on the theory that the collateral had substantial value on the date of bankruptcy. Indeed, no evidence was presented on that issue. Rather, ITT objected for two reasons. First, ITT claims that because Missouri has opted out of the system of federal exemptions and instead only permits the exemption of household goods and jewelry to the extent of a debtor's interest therein, that lien avoidance under § 522(f)(2)(A) of the Bankruptcy Code is not available to Missouri debtors. Second, ITT claims that even if Missouri debtors can avail themselves of § 522(f)(2)(A), this Debtor cannot because her collateral does not consist of "household goods".[1] For the reasons stated below, the Court has concluded that ITT's objection is not well founded and that the Debtor is entitled to avoid ITT's lien on the collateral.

### DISCUSSION

### JURISDICTION

The instant proceeding concerns a motion to avoid a lien. It is, therefore, a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(K). Pursuant to 28 U.S.C. § 157(a), the District Court through its Local Rule 29 has referred this proceeding to the undersigned Bankruptcy Judge for hearing and determination.

### IS LIEN AVOIDANCE UNDER SECTION 522(f)(2)(A) AVAILABLE TO MISSOURI DEBTORS?

ITT argues as follows. Debtor could avoid ITT's lien on her household goods only if ITT's lien impaired her exemption of those goods. ITT's lien would impair Debtor's exemption of her household goods only if Debtor were entitled to claim them as exempt. Under Missouri law, Debtor is not

1. While the collateral obviously consists of jewelry as well as household goods, the arguments of counsel have been made only with reference to household goods. Since § 522(f)(2)(A) permits lien avoidance on both jewelry and household goods, the distinction between jewelry and household goods is of no legal relevance. For brevity's sake, all future references will be to household goods which should be taken as including jewelry.

entitled to claim her household goods as exempt if she has no interest in them. Debtor has no interest in them because ITT's lien equals or exceeds their value. Therefore, concludes ITT, Debtor cannot avoid ITT's lien.

The lynchpin of ITT's argument is the premise that the Debtor has no interest in the collateral because ITT's lien equals or exceeds its value. The principle of which this premise is but a particular instance is that a debtor has no interest in property if there is a lien on that property which equals or exceeds its value. A corollary is that a debtor can claim an exemption in property only if the value of the property exceeds any liens to which it is subject. ITT asserts that these are principles of Missouri law. That being the case, ITT concludes that lien avoidance under § 522(f)(2)(A) is not available to Missouri debtors.

The basis for ITT's assertion is rooted in § 522(b)(1) of the Bankruptcy Code and § 513.427, R.S.Mo. Under § 522(b)(1) each state is given the option to opt out of the system of federal exemptions. Under § 513.427, R.S.Mo., Missouri exercised that option. Having opted out of the federal system of exemptions, Missouri under § 513.430, R.S.Mo., provided its own system of exemptions. That statute states in part:

> "The following property shall be exempt from attachment and execution to the extent of any person's interest therein:
>
> (1) household furnishings, household goods, wearing apparel, appliances, books, animals, crops or musical instruments that are held primarily for personal, family or household use of such person or a dependent of such person, not to exceed $1,000 in value in the aggregate;

> (2) jewelry held primarily for the personal, family or household use of such person or a dependent of such person, not to exceed five hundred dollars in value in the aggregate.

Because household goods are exempt only "to the extent of any person's interest therein", ITT submits that where the debtor has no equity in the goods, the debtor has no interest in them to exempt. In that event, there is nothing for a lien to impair, and so, ITT concludes, lien avoidance under § 522(f)(2)(A) has no application whatsoever. Therefore, in order to evaluate ITT's argument, the threshold question is whether the Missouri statute should be construed to mean that only debtors who have an equity interest in household goods may avail themselves of the exemption. Or alternatively, may debtors avail themselves of the exemption, notwithstanding the fact that the value of the lien equals or exceeds the value of the household goods?[2]

There are no Missouri state or federal cases on point. ITT has referred the Court to cases from other jurisdictions construing the effect of state exemption schemes on the availability of lien avoidance. The Court's own review of these cases, as well as some others, leads it to conclude that such cases are not really on point, or if they are, are unpersuasive as to the meaning of the Missouri statute.

The Fifth Circuit has construed the exemption statutes of Louisiana and Texas. In *Matter of McManus,* 681 F.2d 353 (5th Cir.1982), the Fifth Circuit held that lien avoidance is not available to Louisiana debtors. But the Court so held because Louisiana law, as stated in LSA–R.S. 13:3885, specifically provides that property subject to a chattel mortgage cannot be claimed as exempt. The court recognized that "if Louisiana had not expressly de-

---

**2.** Were Missouri law construed to mean that only debtors with an equity interest may claim an exemption in household goods, the next question would be whether the Supremacy Clause, U.S. Const., Art. VI, cl. 2 requires that notwithstanding state law, Debtors may nevertheless avoid a lien on household goods pursuant to § 522(b)(2)(A). On this question the cir-

cuits are divided, the Fifth and Sixth Circuits holding that federal law does not permit lien avoidance, the Eleventh Circuit holding that it does. *Matter of McManus,* 681 F.2d 353 (5th Cir.1982); *In re Pine,* 717 F.2d 281 (6th Cir. 1983); *In re Hall,* 752 F.2d 582 (11th Cir.1985). Given the basis for this Court's decision, the Court expresses no opinion on this question.

fined mortgaged household goods and furnishings out of the list of exempt property, the result would be arguably different. *Id.* at 356–357.

In *Matter of Allen,* 725 F.2d 290 (5th Cir.1984), the Fifth Circuit held that lien avoidance is not available to Texas debtors. Again, the court so held because Texas law, as stated in Tex.Rev.Civ.Stat.Ann. art. 3836, specifically provides that personal property is exempt "except for encumbrances properly fixed thereon."

The Sixth Circuit has construed the exemption statutes of Ohio, Tennessee and Georgia. In *In re Spears,* 744 F.2d 1225 (6th Cir.1984), the Sixth Circuit held that lien avoidance is not available to Ohio debtors. As in the Fifth Circuit cases, the court so held because Ohio law, as stated in Ohio Rev.Code Ann. §§ 2329.66, 2329.661 (Page 1981), specifically provides that exemptions do not "affect or invalidate any ... security interest ... or any lien created thereby ..."

The court construed both Tennessee and Georgia exemption statutes in the case of *In re Pine,* 717 F.2d. 281 (6th Cir.1983). The court held that lien avoidance was not available to Tennessee debtors. Like the Louisiana and Texas statutes construed by the Fifth Circuit, the Tennessee statute also only permits a debtor to exempt his "equity interest", T.C.A. § 26–2–102.

It is clear that there are significant linguistic differences between the Missouri exemption statute and those of Louisiana, Texas, Ohio and Tennessee. Unlike Missouri, each of the other states *explicitly* conserves liens in their exemption statutes. Therefore, no conclusion as to how the Missouri statute should be construed reasonably can be inferred from the legal analysis of those states' exemption statutes contained in the above cases.

As noted, however, the *Pine* court also construed the Georgia exemption statute, Ga.Code Ann. § 44–13–100(a)(4) (1981). That statute provides in relevant part that:

[A]ny debtor ... may exempt ... for the purposes of bankruptcy ...

(4) The debtor's interest, not to exceed $200 in value in any particular item, in household furnishings, household goods, wearing apparel, appliances ... that are held for the personal, family or household use of the debtor or a dependent of the debtor. The exemption of the debtor's interest in the items contained in this subsection shall not exceed $3500 in total value....

The Georgia statute is nearly identical to the corresponding federal exemption of household goods codified in § 522(d)(3) of the Bankruptcy Code. That section provides that a debtor may exempt "the debtor's interest, not to exceed $200 in value in any particular item or $4000 in aggregate value, in household furnishings, household goods, wearing apparel, appliances ... that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor."

The Georgia statute, like its Missouri and federal counterparts refers only to "the debtor's interest" and unlike those of Louisiana, Texas, Ohio and Tennessee contains no explicit conservation of liens language. Nevertheless, the *Pine* court held that Georgia debtors may exempt only their equity interest in household goods. *Id.* at 283. Since the semantics of the Georgia statute is very similar to the Missouri statute, it is probable that were the Sixth Circuit confronted with the Missouri statute, it would hold that Missouri debtors can claim an exemption in household goods only if such debtors have an equity interest in the property.

This Court cannot accept the Sixth Circuit's reading of the Georgia statute and the implications implicit in it for Missouri law. As noted, the Georgia and Missouri exemption statutes are linguistically similar to their federal counterpart in that each allows exemption of "the debtor's interest" in household goods. If the *Pine* court's construction was correct and the phrase "the debtor's interest" meant "the debtor's equity interest", then not even debtors in states where federal exemptions

apply could avoid liens on their household goods.

Such a construction would not only contradict the well established principle of statutory construction requiring that all parts of an act be given effect if at all possible, *Administrator, Federal Aviation Administration v. Robertson,* 422 U.S. 255, 261, 95 S.Ct. 2140, 2145, 45 L.Ed.2d 164 (1975), but also the intent of Congress. As the legislative history shows, Congress evidenced its intent to make § 522(d)(3) serve as the basis of the lien avoidance provision by making the two provisions applicable to identical interests of debtors. As stated in the House Report,

"[T]he Bill gives the debtor certain rights not available under current law with respect to exempt property.... Frequently, creditors lending money to a consumer debtor take a security interest in all of the debtor's belongings, and obtain a waiver by the debtor of his exemptions. In most of these cases, the debtor is unaware of the consequences of the forms he signs. The creditor's experience provides him with a substantial advantage. If the debtor encounters financial difficulty, creditors often use threats of repossession of all of the debtor's household goods as a means of obtaining payment.

In fact, were the creditor to carry through on his threat and foreclose on the property, he would receive little, for household goods have little resale value. They are far more valuable to the creditor in the debtor's hands, for they provide a credible basis for the threat, because the replacement costs of the goods are generally high. Thus, creditors rarely repossess, and debtors, ignorant of the creditors' true intentions, are coerced into payments they simply cannot afford to make.

The exemption provision allows the debtor, after bankruptcy has been filed, and creditor collection techniques have been stayed, to undo the consequences of a contract of adhesion, signed in ignorance, by permitting the invalidation of nonpurchase-money security interests in household goods."

H.R.Rep. No. 595, 95 Cong. 1st Sess. 127 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News pp. 5787, 6087–88; *In re Maddox,* 713 F.2d 1526, 1528–30 (11th Cir.1983) (citing legislative history and denying the equivalence under the Georgia exemption statute of "the debtor's interest" and "the debtor's equity interest"); *Matter of Lovett,* 11 B.R. 123, 125 (Bkrtcy.W.D.Mo. 1981) ("debtor's interest" is not equivalent to "debtor's equity interest" and a debtor has an interest in property, under § 522(b), even though the creditor's loan may exceed the amount of the security), *vacated on other grounds,* 23 B.R. 760 (Bkrtcy.W.D. Mo.1982); *In re Kursh,* 9 B.R. 801 (Bkrtcy. W.D.Mo.1981).

 Because there are no legally significant differences between the language of the federal exemption on household goods and the Missouri exemption of them, the Court concludes that Missouri debtors can have an interest in household goods even where there exists a lien on such goods which equals or exceeds their value. That being the case, Missouri debtors also can avail themselves of lien avoidance under § 522(b)(2)(A).[3] *See generally,* J.M. Zi-

---

**3.** The Court's reasoning on this issue follows the Eleventh Circuit's in *Maddox, supra.* After *Maddox,* another panel of the Eleventh Circuit also construed Georgia law in the case of *In re Hall,* 752 F.2d 582 (11th Cir.1985). That panel conceded that Georgia law prevents debtors from exempting property to the extent it is encumbered. This concession was made on the panel's reading of *Wallis v. Clerk, Superior Court, DeKalb County,* 166 Ga.App. 775, 305 S.E.2d 639, 641 (1983). *Wallis* does not support such a concession. *Wallis* stands for the proposition that a homestead exemption on real estate is not available where the purchase-money deed of trust exceeds the value of the realty. This is a commonplace which is irrelevant to the availability of lien avoidance on nonpurchase-money security interests in household goods. The panel went on to hold that notwithstanding any Georgia limitation on exemptions, under the Supremacy Clause, lien avoidance is available to debtors in Georgia. As noted, the Court's decision is based on its conclusion that the Missouri statute does not preclude lien avoidance; consequently, the Court does not reach the Suprema-

tron, Exemptions: Section 522, 2 Bankruptcy Developments Journal 41 (1985).

## ARE THE DEBTOR'S GOODS "HOUSEHOLD GOODS"?

ITT argues that even if lien avoidance is available to Missouri debtors, this Debtor's goods are not subject to avoidance because they are not household goods. ITT asks the Court to reach this conclusion by adopting the Federal Trade Commission's ("FTC") definition of "household goods" and applying it to the items that Debtor has exempted. A brief review of the FTC's role in this matter is in order.

On March 1, 1985, the FTC's rule on credit practices (the "Rule") became effective. 16 C.F.R. 444, *et. seq.* The Rule was upheld on July 12, 1985. *American Financial Services Association v. FTC,* 767 F.2d 957 (D.C.Cir.1985). The Rule makes it an unfair credit practice for a lender to receive from a consumer an obligation that "constitutes or contains a nonpossessory security interest in household goods other than a purchase-money security interest." 16 C.F.R. 444.2(a)(4). Household goods are defined as follows:

*Household Goods.* Clothing, furniture, appliances, one radio and one television, linens, china, crockery, kitchenware, and personal effects (including wedding rings) of the consumer and his or her dependents, provided that the following are not included within the scope of the term "household goods":

(1) Works of art;

(2) Electronic entertainment equipment (except one television and one radio);

(3) Items acquired as antiques; and

(4) Jewelry (except wedding rings).

In adopting this definition of "household goods" the FTC stated:

"We adopt a further modification to the section of the rule narrowing the definition of 'household goods' to more nearly limit coverage to necessities and to permit the pledge of certain possessions which have significant economic value. This modification has been undertaken in response to comment and to narrow the prohibition to the class of goods for which the injury to consumers from a security interest exceeds offsetting benefits.

Specifically, we define 'household goods' in terms of a list of common household necessities, together with some items of uniquely personal value, excluding these categories:

(1) Works of art;

(2) Electronic entertainment equipment (except for one television and one radio);

(3) Items acquired as antiques; and

(4) Jewelry (except wedding rings).

We define 'antique' as any item over 100 years of age, including such articles which have been repaired or renovated without changing their original form or character. (Citation omitted).

'Personal effects' is not defined in the rule; we intend it to have its commonly accepted meaning as 'Articles associated with a person, as property having more or less intimate relation to the person of the possessor * * *' We specifically include wedding rings within the term 'personal effects'. Other items clearly within the ambit of the term include those which an individual would ordinarily carry about on his or her person and possessions of uniquely personal nature, such as family photographs. Thus, the definition of household goods does not cover items such as boats, snowmobiles, cameras and camera equipment (including darkroom equipment), pianos, multiple television sets, home work shops and the like.

We exclude one television and one radio from the term 'electronic entertainment equipment' because, in contemporary society, these items have become virtual necessities. For families in rural or isolated areas, a radio is an absolute necessity. For many—especially disabled or infirm persons, or shut-ins—a television

cy Clause question decided by the Eleventh Circuit panel.

may be an equal necessity. We intend that the term 'radio' apply to a conventional, self-contained unit (such as a table model radio, or a transistorized portable radio) with its primary function as a radio. The term does not encompass multi-component audio systems, even though one element of such a system is a radio receiver. Nor does it apply to portable, self-contained, multi-function units (tape recorder/player, amplifier, clock), only one element of which is a radio receiver." 49 Fed.Reg. 7767–7768 (March 1, 1984)

■ The Court concludes that any non-purchase-money security interest on household goods as defined by the Rule is void and unenforceable, irrespective of whether a state permits a security interest in such goods, and irrespective of whether a debtor has claimed such goods as exempt. To the extent that decisions of the Fifth and Sixth Circuit Courts of Appeal antedating the FTC Rule imply a contrary result, they do not state the law.

■ It, however, does not follow that if an item does not fall within the FTC definition of household goods, that it is not household goods for the purpose of lien avoidance under the Bankruptcy Code. The FTC's definition, after all, was not promulgated simply for use in a bankruptcy context, but reflects a cost benefit analysis of a credit practice involving all consumer debtors.

■ From the standpoint of lien avoidance, "only those personal goods necessary to the debtor's new beginning and of little resale value fit the federal bankruptcy philosophy embodied in § 522(f)(2)." *Matter of Thompson,* 750 F.2d 628, 631 (8th Cir. 1984). In applying this standard, the Court holds that household goods include more than those items that are indispensible to the bare existence of a debtor and his family. Items which, while not being luxuries, are convenient or useful to a reasonable existence must also be included. *In re Coleman,* 5 B.R. 76, 78 (Bkrtcy.M.D.Tenn. 1980) (a component stereo consisting of receiver, turntable, two tape recorders, and a pair of speakers are household goods sub-ject to lien avoidance); *Matter of Jones,* 5 B.R. 655 (Bkrtcy.M.D.N.C.1980) (a small garden tractor and mower attachment which were used for yard work and never used for any commercial venture are household goods subject to lien avoidance); *Matter of Beard,* 5 B.R. 429 (Bkrtcy.S.D. Iowa 1980) (a television recording system and stereo sound system are household goods subject to lien avoidance); *contra, In re Ruppe,* 3 B.R. 60 (Bkrtcy.D.Colo. 1980) (stereo systems are not household goods subject to lien avoidance). The Court concludes that each item of collateral in which the Debtor granted ITT a security interest falls within the definition of household goods.

■ These items of household goods are subject to lien avoidance provided that they are of little resale value. As noted, ITT presented no evidence as to their value on the date of bankruptcy. There is a rebuttable presumption, however, that such household goods have little or no value. *Matter of Morris,* 12 B.R. 321, 351 (Bkrtcy. N.D.Ill.1981) ("The Congress has determined that as a generality nonpurchase-money, nonpossessory liens in household goods have little or no value and has legislated accordingly. Any person whose views are to the contrary has the burden of establishing that Congress was in error.) As ITT has not met its burden on this issue, the Court holds that the subject items are of little resale value, and that, accordingly, all conditions for lien avoidance have been satisfied by the Debtor.

A separate Order consistent with this opinion will be entered this date.