**In re Keith L. MILLER and Beverly Kay Miller, Debtors.**

**Bankruptcy No. 86–02162–2.**

United States Bankruptcy Court,
W.D. Missouri.

Sept. 26, 1986.

Timothy McNearney, Kansas City, Mo., for ITT.

Nancy Stuver Wallingford, Kansas City, Mo., for debtors.

## ORDER GRANTING MOTION TO AVOID LIEN EXCEPT AS TO SPECIFIED ITEMS

FRANK W. KOGER, Bankruptcy Judge.

Debtors filed their petition for relief under Chapter 7 on May 9, 1986, attended the Section 341 meeting on June 24, 1986, and filed a Motion to Avoid Lien on August 25, 1986. The lienholder was ITT Financial Services (ITT) and its admittedly non purchase money, non possessory lien was on a "Penney's" Television, a "Penney's" stereo, a ten speed bicycle, a 35 MM camera, assorted hand tools and a lawnmower. September 4, 1986, admitting that it claimed such a lien by virtue of a promissory note and security agreement executed by debtors to ITT on September 27, 1985 and claimed perfection by filing of a UCC–1 with Jackson County, Missouri, Office of Recorder of Deeds.

ITT denied that its lien impaired an exemption of the debtors under Section 522(b) for the reason that debtors had no equity in said property (debtors owed more than the value) and therefore could not avoid the lien under Section 522(f). ITT relies in great part on Section 513.430, Revised Statutes, State of Missouri (1982) which states:

"The following property shall be exempt from attachment and execution to the extent of any person's interest therein:" (emphasis supplied by ITT)

It goes without saying that Missouri has elected to "opt out" of the bankruptcy or federal exemptions and has mandated to use its own state exemptions, so that the question presented is whether the Missouri Statute constrains the avoidance of lien where the debtor owes more on the underlying obligation than the value of the chattels subject to the lien.

ITT has a second string to its bow. ITT urges that the Court adopt the Federal Trade Commission definition of "household goods" contained in 16 CFR 444. That definition is as follows:

"(i) Household goods. Clothing, furniture, appliances, one radio and one television, linens, china, crockery, kitchenware, and personal effects (including wedding rings) of the consumer and his or her dependents, provided that the following are not included within the scope of the term "household goods": (1) works of art; (2) electronic entertainment equipment (except one television and one radio); (3) items acquired as antiques; and (4) jewelry (except wedding rings)."

CCH Installment Credit Guide, Extra Edition, Report 409, March 13, 1984 (sic) p. 99 (hereafter page references to the FTC Rule and Statement of Basis and Purpose will be to the pages in this extra edition and will be designated "CCH").

ITT cites the background of the FTC's regulation, including:

"1. An extensive survey conducted by the National Committee on Consumer Finance . . .;

2. An investigation of the consumer finance industry conducted by the Bureau of Consumer Protection;

3. Written comments reviewed by the FTC from April 1975 through August, 1977 pursuant to its publication of the initial notice of rule making; (these comments were from the consumer finance industry, consumer, legal services, states' attorney general, labor unions, consumer organizations and others);

4. Information gathered at hearings conducted in Dallas, Chicago, San Francisco and Washington, D.C. from September 1977 through January 1978 pursuant to the FTC's Final Notice of Rule Making published in June, 1977;

5. Written comments received through January, 1981 on the final staff reports; and

6. Oral presentations invited from prior rule making participants. (Statement of Basis and Purpose, *supra*, CCH pp. 1–2)."

and further cites the following factors considered by the FTC before promulgating the aforesaid rule:

"1. 7,000 individual delinquent debtor files along with official company operating manuals and training materials, all subpoenaed from twelve consumer finance companies;

2. 1,300 written comments;

3. Testimony of 319 witnesses including expert testimony;

4. Quantitative studies."

Therefore, in the event that the Court does not rule in favor of ITT in respect to the equity issue, the Court must then rule as to which, if any, of the items are definitionally lien avoidable, and what weight, if any, the Court should afford to the FTC definition.

The Court has considered the eight Circuit Court cases very carefully. To date the following circuits have ruled as follows:

Third Circuit—In favor of creditor's position *Simonson v. First Bank of Greater Pittston*, 758 F.2d 103 (3rd Cir.1985)

Fourth Circuit—In favor of creditor's position *In re Fitzgerald*, 729 F.2d 306 (4th Cir.1984).

Fifth Circuit—In favor of creditor's position, see *In re McManus*, 681 F.2d 353 (1982).

Sixth Circuit—In favor of creditor's position, see *Pine v. Credithrift of America, Inc.*, 717 F.2d 281 (1982). See *In the Matter of Spears*, 744 F.2d 1225 (1984).

Second Circuit—In favor of debtor's position, *In Re Brown*, 734 F.2d 119, 125 (1984).

Eleventh Circuit—In favor of debtor's position, *In re Hall*, 752 F.2d 582 (1985), *In re Maddox* 713 F.2d 1526 (1983).

■ Based on these cases, and for the various reasons stated therein, this Court, were this a case of first impression, might be inclined to follow the majority of the circuits and rule in favor of creditor. The reason for this is the words in the Missouri exemption statute:

" . . . to the extent of any person's interest therein".

However, there is another drummer to be considered and this Court believes itself bound to follow that beat. In two opinions by the District Court of the Western District of Missouri, namely: *Lovett v. Beneficial Finance Company*, 11 B.R. 123, (W.D. Mo.1981) and *In the Matter of Johnson*, Civil Action No. 85–06152–CV–SJ–6 (W.D. Mo. January 13, 1986) it has been held that "a debtor has an interest in property even though the creditor's loan may exceed the amount of the security". Those opinions are controlling on this Court and will be followed by this Court. Accordingly, ITT's first point is ruled against it.

■ As to ITT's second point, this Court is not yet ready to accept the Federal Trade Commission's definition as the sine qua non of household goods. The Court believes that the Federal Trade definition is certainly a factor to be considered in determining what are and what are not "household goods" or "household furnishings" and in fact is willing to give considerable weight to their expertise. However, the Court reserves to itself the final determination.

In the instant case, the Court holds that a television, a stereo, and a lawnmower are clearly household goods or household furnishings. The Court holds that a ten speed bicycle and a 35 MM camera are not household goods or household furnishings. The Court anticipates that assorted hand tools means just that and are hammer(s), screw

driver(s), pliers, wrenches and the like that every homeowner finds essential in the maintenance and upkeep of his home. Should ITT desire to present evidence that they consist of something more esoteric and not commonly found in the normal household, it may do so. Otherwise, this point is ruled against ITT.

Accordingly, the Court holds that movant may avoid the lien on the television, stereo, hand tools and lawnmower. Movant may not avoid the lien on the ten speed bicycle and the 35 MM camera.