**In re Dean and Susan VALE, Debtors.**

**Bankruptcy No. 87–61695.**

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division,
at Gary/Lafayette.

Jan. 23, 1989.

Gene Ryding, Portage, Ind., for debtors.

Joseph McDonald, Merrillville, Ind., for plaintiff.

---

1. This Order constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Fed.R. Civ.P. 52 as made applicable by Bankr.R. 9014 and 7052.

MEMORANDUM OPINION
AND ORDER [1]

KENT LINDQUIST, Chief Judge.

## I

### *Statement of Proceedings*

Dean and Susan Vale (hereinafter: "Debtors") filed their motion on December 17, 1987 to avoid the nonpossessory, non-purchase money lien of Beneficial Finance Co., of Indiana (hereinafter: "Beneficial") pursuant to § 522(f)(2)(A). A timely objection was filed by Beneficial on December 23, 1987.

Pursuant to prehearing order of January 20, 1988, the parties stipulated that Appendix "A" to that order is a true and accurate list of the tangible personal property in question, and that the only items in issue, as set out in said appendix, are under the heading "Miscellaneous". These were as follows:

1. Movie camera
2. Movie projector
3. Power drill
4. Power mower
5. Hedge Trimmers
6. ½ horsepower boat motor

The parties filed their briefs and the Court now renders its decision.

## II

### *Conclusions of Law and Discussion*

No objection was made by counsel to the jurisdiction of this Court to this matter. The Court finds jurisdiction to be present, and that this contested matter is a core proceeding pursuant to 28 U.S.C. § 157.

The provision that allows for the avoidance of nonpossessory, nonpurchase-money lien is 11 U.S.C. § 522(f)(2)(A) which provides as follows:

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor

would have been entitled under subsection (b) of this section, if such lien is . . .

\*　　\*　　\*　　\*　　\*　　\*

(2) a nonpossessory, nonpurchase-money security interest in any—

(A) *household furnishings, household goods*, wearing apparel, *appliances*, books, animals, crops, musical instruments, or jewelry that are *held primarily for the personal, family, or household use* of the debtor or a dependent of the debtor. (Emphasis supplied).

In an "opt-out" state, such as Indiana, (*See* 11 U.S.C. § 522(b) and I.C. 34–2–28–0.-5) the property which has a lien thereon sought to be avoided by the Debtors must first be exempt under state law. *In re Vaughn*, 64 B.R. 213, 214 (Bankr.S.D.Ind. 1986); *In re Wetzel*, 46 B.R. 254 (Bankr.W. D.Va.1984).

The Indiana exemption relating to the Debtors' property in the case at bar is at I.C. 34–2–28–1(b). This Code section provides the following:

Sec. 1. The following property of a debtor domiciled in the state of Indiana shall not be liable for levy or sale or execution or any other final process from a court, for any debt growing out of or founded upon a contract expressed or implied, or a tort claim:

\*　　\*　　\*　　\*　　\*　　\*

(b) Other real estate or *tangible personal property* of the value of four thousand dollars ($4,000.). Ind.Rev.Stat. § 34–2–28–1(b). (Emphasis supplied).

Thus, in the case at bar to avoid Beneficial's nonpossessory, non-purchase money security interest in the Debtors' property to the extent of $4,000.00 the tangible personal property in issue must qualify as "household goods", "household furnishings", or "appliances" that are held primarily for personal, family or household use under § 522(f)(2)(A), as it is clear that none of the chattels are wearing apparel, books, animals, crops, musical instruments or jewelry. *In re Vaughn*, 64 B.R. 213, 214 *supra.*

The terms "household furnishings", "household goods" and "appliances" are not defined by the Bankruptcy Code, and neither is the phrase "held primarily for the personal, family, or household use of the Debtor . . . .", and thus, the conclusions reached by the various Bankruptcy Courts in this area have been varied and often conflicting as would be expected. The legislative history to this section does not give any guidance or discuss any definitions or examples as to exactly what types of tangible personal property were to be encompassed by § 522(f)(2)(A).

It should also be noted that many states expressly exempt certain articles of household goods, or household goods reasonably necessary for one household, or those held primarily for personal use in limited amounts, *See* 31 Am.Jur.2d § 73, *Exemptions; See also*, 1 Norton Bankruptcy Law and Practice, *Appendix to Part 26 State Exemptions* (Callaghan & Co.). However, the Indiana exemption law merely grants a blanket exemption in "tangible personal property" up to $4,000.00. Thus, there is no state law definition or "laundry list" that this Court can look to for guidance on the issue. *See e.g.*, Arizona exemption statute, ARSA § 33–1123, which specifically exempts such items as one TV or radio or stereo, and one bicycle. One shotgun, a rifle or pistol may also be exempted, but they are placed in different categories of personal property. ARSA § 33–1125. In Idaho furnishings and appliances reasonably necessary for ones household are exempt. One firearm is also exempt, but it is placed in a different category. IC §§ 11–604 and 605. Maine exempts household furnishings, goods, and appliances. MSRA 14 § 4422. A boat for commercial fishing is placed in a different category. MSRA 14 § 4422.

What is the appropriate definition of household furnishings, household goods, and appliances for the purposes of § 522(f)(2)(A)? The Federal Trade Commission has formulated a definition for deciding what constitutes "household goods". The definition is as follows:

Clothing, furniture, appliances, one radio and one television, linens, china, crock-

ery, kitchenware, and personal effects (including wedding rings) of the consumer and his or her dependents, provided that the following are not included within the scope of the term "household goods":

(1) Works of Art;

(2) Electronic entertainment equipment (except one television and one radio);

(3) Items acquired as antiques; and

(4) Jewelry (except wedding rings).

16 C.F.R. § 444.2(a)(4) (1985).

This highly restrictive definition is not an act of Congress that is binding upon a Bankruptcy Court. Moreover, the FTC regulation was devised for the purpose of clarifying the definition of an unfair trade practice. Therefore, this narrow FTC standard shall not be the standard for defining "household goods" for the purposes of § 522(F)(2)(A). *In re Vaughn,* 64 B.R. at 215, *supra. In Re Lanzoni,* 67 B.R. 58 (Bankr.W.D.Mo.1986); *Matter of Smith,* 57 B.R. 330 (Bankr.N.D.Ga.1986). *See also, In re Boyer,* 63 B.R. 153 (Bankr.E.D.Mo. 1986). In *In re Boyer* the Debtors moved to avoid a nonpurchase money, nonpossessory security interest in the following: push lawn mower, two fold chairs, two gold earrings, gold diamond ring, Kodak Instamatic camera, two clock/radio telephones, a 19″ color portable TV, and a Sound Design stereo system. The Creditor urged that the Court adopt the FTC definition of "household goods". The court in *Boyer* stated as follows:

The Court concludes that any nonpurchase-money security interest on household goods as defined by the Rule [16 CFR § 444] *et. seq.* is void an unenforceable, irrespective of whether a state permits a security interest in such goods, and irrespective of whether a debtor has claimed such goods as exempt. To the extent that decisions of the Fifth [*Matter of Allen,* 725 F.2d 290 (5th Cir.1984)] and Sixth [*In re Spears,* 744 F.2d 1225 (6th Cir.1984)] Circuit Courts of Appeal antedating the FTC Rule imply a contrary result, they do not state the law.

It, however, does not follow that if an item does not fall within the FTC definition of household goods, that it is not household goods for the purpose of lien avoidance under the Bankruptcy Code. The FTC's definition, after all, was not promulgated simply for use in a bankruptcy context, but reflects a cost benefit analysis of a credit practice involving all consumer debtors.

From the standpoint of lien avoidance, "only those personal goods necessary to the debtor's new beginning and of little resale value fit the federal bankruptcy philosophy embodied in § 522(f)(2)." *Matter of Thompson,* 750 F.2d 628, 631 (8th Cir.1984). In applying this standard, the Court holds that household goods include more than those items that are indispensable to the bare existence of a debtor and his family. Items which, while not being luxuries, are convenient or useful to a reasonable existence must also be included. *In re Coleman,* 5 B.R. 76, 78 (Bkrtcy.M.D.Tenn.1980) (a component stereo consisting of receiver, turntable, two tape recorders, and a pair of speakers are household goods subject to lien avoidance); *Matter of Jones,* 5 B.R. 655 (Bkrtcy.M.D.N.C.1980) (a small garden tractor and mower attachment which were used for yard work and never used for any commercial venture are household goods subject to lien avoidance); *Matter of Beard,* 5 B.R. 429 (Bkrtcy.S.D. Iowa 1980) (a television recording system and stereo sound system are household goods subject to lien avoidance); *contra, In re Ruppe,* 3 B.R. 60 (Bkrtcy.D.Colo. 1980) (stereo systems are not household goods subject to lien avoidance). The Court concludes that each item of collateral in which the debtor granted ITT a security interest falls within the definition of household goods.

These items of household goods are subject to lien avoidance provided that they are of little resale value. As noted, ITT presented no evidence as to their value on the date of bankruptcy. There is a rebuttable presumption, however, that such household goods have little or no value. *Matter of Morris,* 12 B.R. 321, 351 (Bkrtcy.N.D.Ill.1981) ("The Congress had determined that as a generality non-

purchase-money, nonpossessory liens in household goods have little or no value and has legislated accordingly. Any person whose views are to the contrary has the burden of establishing that Congress was in error.) As ITT has not met its burden on this issue, the Court holds that the subject items are of little resale value, and that, accordingly, all conditions for lien avoidance have been satisfied by the debtor.

*Id.* at 159.

■ Because each individual household has different needs and wants, determining what is a household good, furnishing or appliance shall be done on a case by case basis. *In re Vaughn,* 64 B.R. 213, 214 (Bankr.S.D.Ind.1986); *Matter of Smith,* 57 B.R. 330 (Bankr.N.D.Ga.1986).

■ Moreover, exemption statutes have generally been broadly construed in the Debtor's benefit. 31 Am.Jur.2d. *Exemptions* §§ 3, 8 (1967) as *cited in In re Coleman,* 5 B.R. 76, 78 (Bankr.M.D.Tenn.1980).

The Seventh Circuit in the case of *Matter of Barker,* 768 F.2d 191, 196 (7th Cir.1985) in construing an Illinois Exemption Statute when Illinois had "opted-out" of the exemption scheme of the federal Bankruptcy Code, noted that it had consistently held that personal property exemption statutes should be liberally construed in order to carry out the legislature's purpose in enacting them—to protect Debtors, *citing In Matter of Schriar,* 284 F.2d 471, 473–74 (7th Cir.1960) and *In re Feilchenfeld,* 99 F.2d 710, 711 (7th Cir.1938). *See also, Matter of Smith,* 640 F.2d 888 (7th Cir.1981). The *Barker* court concluded that a clear legislative intent to grant protection to Debtors and the Courts' liberal construction of exemption statutes convinced it that where an exemption statute might be interpreted favorably or unfavorably vis à vis a Debtor, the court should interpret a statute in a manner that favors the Debtor.

In Indiana, exemption from execution is purely statutory. *Hobbs v. Town of Eaton,* 38 Ind.App. 628, 78 N.E. 333 (Ind.App. 1906). These exemptions are based on statutes that carry into effect the provisions of Article I, § 22 of the Indiana Constitution which provides that, "The privilege of the Debtor to enjoy the necessary comforts of life shall be recognized by wholesome laws, exempting a reasonable amount of property from seizure or sale, for the payment of any debt or liability hereafter contracted; ..." *Gregory v. Latchem,* 53 Ind. 449 (1876).

Indiana exemption laws are liberally construed to effect their intent and purpose. *In re Fogel,* 164 F.2d 214 (1948), *cert. den.* 333 U.S. 862, 68 S.Ct. 741, 92 L.Ed. 1141; *In re Summers,* 253 F.Supp. 113 (D.C. 1966); *Cowan Tent Co. No. 61 v. Treesh,* 199 Ind. 24, 155 N.E. 42 (1927); *H.C. Smith Coal Co. v. Finley,* 190 Ind. 481, 131 N.E. 5 (Ind.1921); *Pomeroy v. Beach,* 149 Ind. 511, 49 N.E. 370 (1898); *Butner v. Bowser,* 104 Ind. 255, 3 N.E. 889 (1885).

In *In re Coleman,* 5 B.R. 76 (Bankr.M.D. Tenn.1980), the Court liberally construed "household furnishings" and "household goods" to include "any personal property normally used by the Debtors or their dependents in or about the residence". The *Coleman* Court concluded that those phrases include "home entertainment items", such as a compact stereo system, consisting of a receiver, turntable, two tape receivers, and a pair of speakers, "regardless of how elaborate."

The Court concluded that a review of the legislative history of 11 U.S.C. § 522 revealed no intention on the part of Congress to depart from the well-accepted general approach to construing exemption statutes liberally in favor of Debtors. *Contra, General Finance Corp. v. Ruppe,* 3 B.R. 60, 61 (Bankr.D.Colo.1980) which held that the definition of household goods must be given a narrow construction. The *Ruppe* Court defined household goods as "those items necessary to the functioning of the household consistent with providing the Debtor with a fresh start contemplated by the overall bankruptcy philosophy". Based upon that definition, the *Ruppe* Court concluded that a camera and projector would not be so included, as they are not necessary to the functioning of the household, but are "recreational" items. *In re Coleman* and *In re Ruppe* appear to set out the

basic dichotomy that has developed in the courts over this issue.

The various decisions on the issue are clearly fact specific, and make it difficult for the Court to construct a general definition that would be easily applicable in most, if not all, circumstances. Authority can undoubtedly be cited by both sides supporting their respective positions on each item in question. In addition, it takes little imagination to conjure up various scenarios where an item might have several different purposes. For instance, a firearm can be an antique or a collector's item of considerable value that is never actually used but is merely displayed or stored; it can be converted into a cigarette lighter for use on a coffee table; it can be kept on the household premises for security purposes; it can be used only for recreational purposes, i.e. hunting; it can be kept off the household premises in the Debtor's vehicle for security purposes while traveling, or it may be used in the Debtor's vocation, i.e. as a security guard, and thus possibly be a tool of his trade. Should the Court reach the same conclusion regardless of the purpose to which the firearm is put, or its value?

In addition, does the fact that the chattel is only of recreational or entertainment value rather than being merely utilitarian in nature exclude it from qualifying under § 522(f)(2)(A) even though it is used or kept in or about the residence? Finally, even if it has utilitarian value, and is used in or about the residence, what if the chattel is of substantial value far in excess of what the Debtor, given his station in life, would normally possess, and is not really necessary for the Debtor's "fresh start"? A survey of the cases indicates the diversity in analysis, rationale and results. *See,* Anno: *Avoidance Under 11 U.S.C. § 522(f)(2) of the Bankruptcy Code of 1978 of Nonpossessory, Nonpurchase-Money Security Interest On Debtor's Exempt Personal Property.* 55 A.L.R. Fed. 353, § 8, *et seq.*

At the risk of unduly burdening this opinion with case law, the Court feels compelled to review many of the cases in the area and analyze the diverse results obtained.

In *In re Courtney,* 89 B.R. 15 (Bankr.W. D.Tex.1988), the Court held that the term "household goods" as used in the lien avoidance statute includes any personal property normally used by and found in the residence of the Debtor and the Debtors' dependents or at or upon the curtilage. The *Courtney* Court also held that this term includes personal property that enables the Debtor and dependents to live in a usual, convenient and comfortable manner, or that has entertainment or recreational value, and even though it is used away from the residence or curtilage, *citing In re Bandy,* 62 B.R. 437, 439 (Bankr. E.D.Cal.1986), *In re Langley,* 21 B.R. 772 (Bankr.D.Maine 1982), and *Matter of Beard,* 5 B.R. 429 (Bankr.S.D.Iowa 1980). The Court held that guns, bows and arrows, cameras, golf clubs, and a bicycle qualified as "household goods".

In *Oswald v. ITT Financial Services,* 85 B.R. 541 (Bankr.W.D.Mo.1986), the Court held that firearms were not "household goods" in that items are not "household goods" simply because they are found in many or most homes.

In *In re Eveland,* 87 B.R. 117 (Bankr.E. D.Cal.1988), the Court permitted the avoidance of a lien in such diverse items as bicycles, cameras, and skiing, camping, fishing, and exercise equipment, but not in firearms. The Court reluctantly felt compelled to follow *In re Lucas,* 77 B.R. 242 (B.A.P. 9th Cir.1987), where the Court noted in applying California Exemption Statutes, the California Courts placed substantial reliance on the Debtor's station in life and manner of living in determining whether property should be exempt. The *Lucas* court avoided a lien in camera equipment, golf clubs, and an exercise bike as household goods.

In *In re Caruthers,* 87 B.R. 723 (Bankr. N.D.Ga.1988), it was held that a television set and stereo system were "household goods" where used for personal or family purposes around the home.

In *In re Gray,* 87 B.R. 591 (Bankr.W. D.Mo.1988), the court held that the Debtor

could not void a lien in guns, a swimming pool and sporting knives as they were not "household goods"; however, the court permitted the Debtor to void a lien in his television, VCR, computer, stereo, CB radio base, tools and lawn equipment, luggage, grill, hobby equipment, phone, swingset and auto repair equipment.

In *In re Ray*, 83 B.R. 670 (Bankr.E.D. Mo.1988), the Debtor's lawn equipment, camping equipment, guns, bicycles and exercise equipment were all held to be "household goods" in that such goods were necessary to the functioning of a household or normally used by and found in the residence of the Debtor.

In *In re Bowen*, 82 B.R. 102 (Bankr.E.D. Mo.1988), the court held that a lien in the Debtor's VCR, guns, fishing equipment, golf clubs, tent, cameras, home workshop, tools, drill, hand tools, penny collection, barbecue grill, jewelry, and piano organ could be voided.

In *Matter of Lenczowski*, 79 B.R. 392 (Bankr.W.D.Ind.1987), the court held that a speedboat, its motor, and a boat trailer were not "household goods".

In *In re Weaver*, 78 B.R. 135 (Bankr.N. D.Tex.1987), it was held that a lien on firearms and minibikes is not voidable based on the federal exemption.

In *In re Barley*, 74 B.R. 450 (Bankr.N.D. Ind.1987), the Court held that a lien on a chain saw and a rifle was voidable in that they were items which could be used in or about the Debtor's residence; and that term "household goods" should be broadly interpreted.

In *In re Vittetoe*, 64 B.R. 111 (Bankr.W. D.Mo.1986), the Court held that cameras, rods and reels and weight sets were "personal property" rather than "household furnishings or household goods" pursuant to 11 U.S.C. § 522(f)(2). The Court stated as follows:

> The cases which determine the character of chattels as household furnishings or goods within the meaning of section 522(f)(2) of the Bankruptcy Code usually do so on the inherent nature or character of the goods themselves. Thus, whether characterized as "household furnishings or household goods" or as "personal property," they are ordinarily deemed exemptible if they are "items necessary to the functioning of a household." *In re Martinez*, 22 B.R. 7, 8 (Bkrtcy.D.N.M. 1982). There can be little question that television sets (*see In re Fisher*, 11 B.R. 666 (Bkrtcy.W.D.Okla.1981)), stereos (*id.*), radios and clocks (*id.*) and the other appliances which are necessary to the upkeep and maintenance of the home (the hand drill, paint sprayer, chain saw, weed eater and push mower) (*see Matter of Jones*, 5 B.R. 655, 657 (Bkrtcy.M.D.N. C.1980), have the character of "household goods" within the meaning of the statute on lien avoidance. The class rings are almost certainly "wearing apparel" within the meaning of the same section. There is authority, however, that the "Polaroid camera" and the "Kodak instamatic" claimed by the debtors are not considered as "household goods" within the meaning of the lien avoidance section. *See In re Ruppe*, 3 B.R. 60, 61 (D.Colo.1980) ("(A) camera and projectors would not be included as they are not necessary to the functioning of the household but are, in fact, recreational items."); *Matter of Noggle*, 30 B.R. 303, 305 (Bkrtcy.E.D.Mich.1983) ("If Congress had intended to permit a debtor to avoid a lien on all items kept in a household, there would have been no need to separately list property such as appliances, books, musical instruments or jewelry. Separately listing such items evidences an intent that not all property kept in the household is encompassed by the term household goods."); *In re Norman*, 32 B.R. 562, 568 (Bkrtcy.W.D.Mo.1983). By application of the same logic, it would appear that the rods and reels and the weight set cannot be regarded as property upon which a lien can be avoided under section 522(f)(2) of the Bankruptcy Code.

*Id.* at 111, n. 1.

In *In Re Lanzoni*, 67 B.R. 58, *supra*, the Court applied the Missouri exemption statute based on that states "opt-out" of the federal exemption scheme. The Missouri

exemption statute did not define "household goods". The Court held that a lawn mower was a household good. It also held that stereo equipment, a television, and a cassette player were household goods, in that although they were not "life support necessities", they were useful for family entertainment.

In *In Re Miller*, 65 B.R. 263 (Bankr.W.D. Mo.1986), the Court allowed the avoidance of a lien in the Debtor's television, stereo, lawn mower and hand tools, but the Debtors were not permitted to avoid a lien on a bicycle and 35mm camera.

In *In Re Vaughn*, 64 B.R. 213, *supra,* the Court held that the Debtor's stereo, cassette player, turntable and computer, which was attached to the Debtor's television and used to play television games, were held to be "household goods" and the lien thereon held to be voidable. The Court adopted the less restrictive definition of "household goods" to include any personal property normally used by the Debtors or their dependents in or about their residence, *citing In re Coleman*, 5 B.R. 76 (Bankr.M.D.Tenn.1980). *Accord, In Re Vaughn*, 67 B.R. 140 (Bankr.C.D.Ill.1986) (lien on Debtor's stereo voidable absent evidence rebutting presumption that stereo was of little resale value.)

The Court in *In Re Psick*, 61 B.R. 308 (Bankr.D.Minn.1985), held that only those personal goods necessary to the Debtor's new beginning, and of little resale value, fit the bankruptcy philosophy of allowing lien avoidance. There the Court held that the Debtors' dirt bike, tractor-loader and automobile were not "household furnishings", "household goods", or "appliances". *Citing In re Thompson*, 750 F.2d 628, 631 (8th Cir.1984) where the Court held "that only those personal goods necessary to the Debtor's new beginning and of little resale value fit the federal bankruptcy philosophy embodied in section 522(f)(2)." The *Psick* court concluded that although there is no dispute that the Debtors used the items in their daily household activities, the goods simply did not fall within the limiting construction placed on § 522(f)(2) by the Eighth Circuit.

In *Matter of Noggle*, 30 B.R. 303 (Bankr. E.D.Mich.1983), the Court held that a rifle was not a household good in that a rifle is not generally understood to be a household good, and that the mere fact that it is kept in the household does not make it so within the meaning of §§ 522(d)(3) or 522(f)(2)(A).

In *In re Greenhill*, 27 B.R. 197 (Bankr.S. D.Ohio 1982), the court held that a trail bike was not a household good.

In *In re McPherson*, 18 B.R. 240 (Bankr. D.N.M.1982), the court held that § 522(f)(2)(A) must be strictly construed, *citing, In re Ruppe*, 3 B.R. 60, *supra; In re Boozer*, 4 B.R. 524 (Bankr.N.D.Ga.1980), and further held that a gun did not fall within the meaning of either "household goods" or "household furnishings", but that a gun cabinet fell within the definition of "household furnishings" and thus the lien thereon could be voided.

In *In re Cole*, 15 B.R. 322 (Bankr.W.D. Mo.1981), the court held that a firearm did not constitute property on which a lien could be voided under § 522(f)(2).

*In re McCloud*, 7 B.R. 819 (Bankr.M.D. Tenn.1980) (stereo held to be avoidable household goods under federal exemption statute).

In light of the conflicting approaches and conclusions reached by the various courts, are the chattels in the case at bar household furnishings, goods or appliances?

"Household" as a noun has been defined as, "a domestic establishment including the members of a family and others living under the same roof". The American Heritage Dictionary, New College Edition, p. 638 (Houghton Mifflin Co. 1976) (Hereinafter "Heritage"). Black's Law Dictionary defines "Household" as an adjective as "Belonging to the house and family; Domestic." Black's Law Dictionary, p. 666 (West. Pub.1979).

"Furnishings" as plural of "furnishing" has been defined as "the furniture, appliances, and other movable articles in a home or office". *Heritage* at 534.

"Goods" has been defined as "portable personal property". *Heritage* at 567.

An "appliance" has been defined as "a device or instrument, especially one operated by electricity and designed for household use. *See* synonym at tool". *Heritage* at 63.

Giving a common-sense, plain-meaning construction to these words or phrases, do the chattels in issue fall within their meaning for the purposes of § 522(f)(2)(A)?

In construing § 522(d)(2) and § 522(f)(2)(A) the court must also consider the background leading to the enactment of those sections and the purposes thereof. Prior to the enactment of the 1978 Bankruptcy Code consumers lenders would take a nonpossessory, nonpurchase money security interest in household goods, furnishings and appliances essential to the Debtor's ability to maintain his household. The inherent value of most of such collateral was quite often of little importance, for as a practical matter not much more than "garage sale" prices could be obtained for such used chattels on liquidation by the secured party. Nevertheless, the cost and inconvenience of replacement by the Debtor could be considerable to the Debtor, if in fact the secured party were to repossess or foreclose. Accordingly, when the Debtor filed a bankruptcy petition the secured party often used the threat of repossession, rarely carried out, to extract more than he would be able to get if he did a foreclosure or repossession. For the legislative history to this section, *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. pp. 126–127 (1977), *reprinted* Appendix 2, Legislative History, *Collier on Bankruptcy* (L. King 15th ed.). *See also, In re Helmuth,* 92 B.R. 494 (Bankr.N.D.Okla.1988), which discusses the legislative history and purpose of § 522(f)(2)(A). Section 522(f)(2)(A) was enacted to prevent such a secured creditor from exerting undue financial pressure based on chattels that had limited intrinsic value, but were essential to the Debtor. It was designed to protect "the Debtor's essential needs and to enable him to have a fresh start economically." *United States v. Security Industrial Bank,* 459 U.S. 70, 103 S.Ct. 407, 415, 74 L.Ed.2d 235 (1982) (Blackmun, J. concurring).

■ The items listed in 11 U.S.C. § 522(f)(2)(A), (B) and (C), i.e. household goods, furnishings, appliances, etc., are the same as the items listed in § 522(d)(3), (4), (6) and (9). Accordingly, this Court is in agreement with those cases that hold that Congress intended only those items listed in the foregoing subparagraphs of § 522(d) fall within the scope of § 522(f)(2). That is except where a state has not "opted-out" what property is exempt is determined by state law, but federal law determines what property may be avoided. *In re Thompson,* 750 F.2d 628 (8th Cir.1984); *In re Eveland,* 87 B.R. 117, *supra; In re Steele,* 8 B.R. 94 (Bankr.D.C.S.D.1980); *In re Sweeney,* 7 B.R. 814 (Bankr.E.D.Wis.1980) (applying federal exemption); *In re Moore,* 5 B.R. 669 (Bankr.S.D.Ohio 1980); *In re Abt,* 2 B.R. 323 (Bankr.E.D.Pa.1980) (applying federal exemption). For example, motor vehicles are expressly provided for in § 522(d)(2), while § 522(f)(2)(A), (B) and (C) makes no reference to motor vehicles, and thus a nonpurchase money lien in a vehicle is not voidable. *See e.g., Smith v. Avco Financial Services,* 29 B.R. 345 (Bankr.M.D.Pa.1985); *In re Martinez,* 22 B.R. 7 (Bankr.D.N.M.1982).

In *In the Matter of Thompson,* 750 F.2d 628 (8th Cir.1984), the Debtors, Iowa residents, sought to void a lien of certain pigs under six months of age pursuant to § 522(f)(2). Iowa, pursuant to § 522(b) opted out of federal exemptions. Iowa law allowed a Debtor to claim an exemption in all pigs under six months of age. The Bankruptcy Court held that the creditors' lien impaired the Debtor's exemption, but declined to void the lien in that the pigs were not "held primarily for personal, family, or household use". The *Thompson* court in affirming the Bankruptcy Court's decision stated as follows:

Although a state may elect to control what property is exempt under state law, federal law determines the availability of a lien avoidance. *See, e.g., In re Wright,* 34 B.R. 643 (Bankr.W.D.Ky.1983); Note, *Avoiding Liens Under the New Bankruptcy Code: Construction and Application of Section 522(f),* 15 U.Mich.J.L.

Ref. 577 (1982) (hereinafter cited as *Avoiding Liens.*

\*    \*    \*    \*    \*    \*

Section 522(f)(2) was first introduced into the bankruptcy laws in 1978. As the legislative history shows, Congress determined that a lien avoidance provision was necessary to provide debtors with a mechanism by which they could extricate themselves from "adhesion contracts" impairing a "fresh start." Legislators were concerned with creditors who, in loaning money, took security interests in all of a debtor's personal belongings, and then threatened repossession as a means of coercing repayment from frightened debtors. *See* H.R.Rep. No. 595, 95th Cong., 2d Sess. 126–27, *reprinted in* 1978 U.S.Code Cong. & Adm.News 5787, 6087–88 (hereinafter cited as 1978 U.S. Code Cong. & Adm.News). Section 522(f)(2) was envisioned as of "significance for the average consumer debtor." 1978 U.S.Code Cong. & Adm.News at 6088. *See also, United States v. Security Industrial Bank,* 459 U.S. 70, 84, 103 S.Ct. 407, 415, 74 L.Ed.2d 235 (1982) (Blackmun, J., concurring) ("[T]he security interest seems to have little direct value and weight in its own right and appears useful mainly as a convenient tool with which to threaten the debtor to reaffirm the underlying obligation \* \* \* ").

\*    \*    \*    \*    \*    \*

The federal lien avoidance statute, however, has a different objective than that of the exemption statutes. *See, e.g., Sweeney v. Pacific Finance Co., (In re Sweeney),* 7 B.R. 814 (Bankr.E.D.Wis. 1980), *aff'd on reh'g en banc sub nom, In re Gifford,* 688 F.2d 447 (7th Cir. 1982). Although Congress was interested in seeing that debtors achieve a fresh start, the primary goal of the lien avoidance statute was to prevent creditors from forcing debtors in bankruptcy to reaffirm consumer debts. Not every item exempt under state or federal law can be avoided under section 522(f)(2). Congress was concerned that a balance be maintained between creditors and

debtors. The Bankruptcy Reform Act of 1978 was not intended to be "pro-debtor." *See* Note, *Avoiding Liens,* 15 U.Mich.J.L.Ref. at 582. As Justice Blackmun has observed:

> Section 522(f)(2) permits the debtor to "avoid the fixing" of a nonpossessory, nonpurchase-money security interest in certain property, *but the subsection does not extend to all property otherwise exempt* \* \* \*. It is limited to certain personal items, such as household furnishings, wearing apparel, jewelry, tools of the debtor's trade, and professionally prescribed health aids. *United States v. Security Industrial Park,* 459 U.S. 70, 83, 103 S.Ct. 407, 415, 74 L.Ed.2d 235 (1982) (Blackmun, J., concurring) (emphasis added).

*Id.* at 630–631.

It must be stressed that if the Debtors were *only* seeking to *exempt* the chattel in question from their estate, and preserve the asset to themselves vis à vis liquidation by the *trustee* for the benefit of other creditors, whether the chattels were household goods, household furnishings or appliances would not be relevant. That is, as long as the Debtors had not otherwise used up their $4,000.00 exemption in tangible property under Indiana law, the chattels in question could be exempted from the Debtors' estate regardless of their intended use. However, when the Indiana exemption statute is used in conjunction with the Debtors' voiding powers under § 522(f)(2), the lien can only be voided if it is the specific type of property as set out in § 522(f)(2), i.e. this section has a different purpose and objective than the Indiana Exemption Statute as applicable by Indiana's "opt-out". Inasmuch as Indiana has no specific statute which relates to household goods, household furnishing or appliances, the Court will apply the analysis of *Patterson* to Debtors who are Indiana residents, and who claim that their exemption in tangible personal property in a value of up to $4,000.00 is impaired by a non-possessory, non-purchase money security interest in tools of the trade.

■ At the risk of being too pedestrian in searching for a workable definition the Court believes that, if at all possible, the terms "household goods", "household furnishings", and "appliances" should be given their most fundamental, common and ordinary definitions. In addition, it is a fundamental canon of statutory construction that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning. *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979). It seems to this court that to some extent the necessary categorization of tangible goods between those items that are household goods, household furnishings and appliances and those that are not can be resolved by envisioning where a reasonably prudent, hypothetical consumer would find the particular item in question if he were to use the directory or sales catalog of any large, well-established retail department store, e.g. Marshall Fields, Sears, Wards or K–Mart, who has over the years divided the sale of goods into departments, and after dealing with consumers over many years has come to learn in which department a consumer expects to find a certain type of goods.

For instance, the average consumer does not look to purchase firearms in the household goods, household furnishings or appliance department. This also would be true if one were desirous of purchasing a bicycle, fishing equipment, or a camping tent. None of these items fall within either the conventional, lay concept or a merchandiser's concept of household goods, household furnishings, or appliances. This is certainly far from a fool proof or all inclusive test, but it is helpful in the overall analysis.

■ It is clear to the Court that the mere fact certain items or personal property or "goods" are 1) normally found in or around the Debtor's household, or the curtilage thereof, and 2) the Debtor uses the items in connection with, or arising out of his household activities or personal affairs, either for utilitarian or recreational purposes, does not, standing alone, make such items household goods, household furnishings or appliances for the purposes of § 522(f)(2).

If the legislature intended such a broad and sweeping application of § 522(f)(2)(A) it could have merely permitted lien avoidance in "all goods found in and around the Debtor's household", or like language, but did not.

As the Court noted in *Matter of Noggle*, 30 B.R. 303, 305 (Bankr.E.D.Mich.1983), if Congress had intended to permit a Debtor to avoid all items kept in a household there would have been no need to separately list property such as appliances, books, musical instruments or jewelry and that separately listing such items evidences an intent that not all property kept in the household is encompassed by the term household goods. For example, some Debtors may store such chattels as a bicycle, mini-bike, a boat and motor, or a motorcycle in the attic, basement, garage or spare room of their home or in a storage shed within the curtilage. It does not follow that these chattels are household goods for the purposes of § 523(f)(2)(A), even though they may have as much recreational or entertainment value to such a Debtor as a TV or stereo would have to some other Debtor. The Debtor may have exercise equipment, a pool table or tennis table which are used daily in his home, or golf clubs, fishing gear or tennis equipment, all of which are kept within the residence, but may be used by the Debtor regularly outside thereof. It does not follow that these are household goods.

■ The Court believes that it must also focus in on the primary *purpose* of the lien avoidance statute based on the legislative history discussed above, which is to preserve to the Debtor and his dependents those basic goods found in or around the household from the threat of repossession or foreclosure which are clearly essential for a fresh start, and without which no ordinary, contemporary household functions. These are the types of chattels that prior to the enactment of § 522(f)(2)(A) made the Debtor amenable to extortionate practices and undue pressures by secured creditors, and resulted in coerced reaffir-

mation agreements. The Debtor would reaffirm in amounts far in excess of the fair market value of these types of chattels as they were deemed indispensable and essential by the Debtor to the maintenance of a normal life style within or around the household as is commonly understood in contemporary terms, and not the Debtor would not so reaffirm as to discretionary luxury, hobby, leisure, or recreational items without which any Debtor's household could clearly function, albeit less comfortably or pleasantly.

Once again the Court turns to the language of the United States Supreme Court in the case of *United States v. Security Industrial Bank*, 103 S.Ct. 407, 415, *supra*, where Justice Blackmun in the concurring opinion noted that § 522 was enacted, "to protect the debtor's *essential needs* and to enable him to have a fresh start economically. Section 522(f)(2) permits the Debtor to 'avoid the fixing' of a nonpossessory, nonpurchase money security interest in *certain* property, but the subsection *does not extend to all property otherwise exempt under § 522(d)*. It is limited to certain personal items...." (Emphasis added).

This court also agrees with the court in *Creditthrift of America Inc. v. Meyers*, 2 B.R. 603, 606 (Bankr.E.D.M.) which stated "[S]ince section 522(f) does materially affect the rights of secured creditors, its application should not be extended beyond the end it intended to reach."

It is also noted that the lien avoidance statute really has two parts. First, as in this case it must be initially determined if the chattel is a "household good", "household furnishing" or an "appliance". If it

is, it must also be determined if it is held *"primarily* for the personal, family or household use of the Debtor or a dependent of the Debtor". (Emphasis added). The modifier "primarily" certainly is significant, and must be considered in determining if the lien is voidable. It is also noted that § 522(f)(2)(A) does not use the modifier "necessary" as used in many state exemption statutes. *See* Anno: *What Is "Necessary" Furniture Entitled to Exemption From Seizure or Debt.* 41 A.L.R.3d 607.

■ The Court concludes that even though a movie camera, a movie projector, and a ½ horsepower boat motor are tangible personal property kept in and around the Debtor's household they are not household goods or appliances upon which a lien thereon may be voided in the sense of § 522(f)(2). They are not *essential* to the needs of the Debtors or their dependents, i.e. although they are the types of leisure, entertainment or unessential items that the average, reasonable and prudent consumer debtor would desire to keep if he could afford them, he would not feel compelled to reaffirm a debt to the holder of a security interest therein in an extortionate amount on the basis that if he did not do so he would not be able to maintain and preserve his household and carry out the normal day to day function of living in and running a contemporary household without discomfort or inconvenience.[2] The threat of repossession or foreclosure of such items that are not basic and indispensable to the Debtor's household should not result in undue pressure on a reasonable and prudent Debtor to reaffirm, as a household can fulfill its essential functions without them.

---

**2.** The court is well aware that it may be argued by analogy that a movie projector and movie camera are electronic home entertainment equipment or appliances, and may fall under the same broad general category as other home entertainment equipment such as TVs, radios, stereos, and VCRs; however, the controlling factor is not in the inherent or intrinsic nature of the chattel, but whether it is the type of chattel that is essential or typically viewed as essential to the functioning of a normal, contemporary household. *See, In re Caruthers,* 87 B.R. 723, 728 (Bankr.N.D.Ga.1988) and cases

cited therein. A TV is, a movie camera and projector are not. It can also be argued that a TV has entertainment value for one debtor while a gun has recreational value for another, and no distinction should be made between the two. The Court does not agree. A gun is not actually used in and around the household, i.e. discharged, or least it should not be, and if it is so used it is probably done so illegally, while a TV in modern society is deemed almost as essential as any item of household goods to the contemporary family unit.

■ On the other hand, in this day and age, the average debtor-householder would view a power drill and a power mower as those types of chattels that are reasonably essential to the functioning, preservation and maintenance of the typical household, and are held by the Debtor primarily for that purpose. Their threatened loss by repossession or foreclosure would certainly be a valid inducement to reaffirm a debt to a creditor holding a security interest therein, in an amount in excess of the fair market value thereof, as the Debtor would be compelled to replace such essential items at present-day retail prices if they were lost through foreclosure or repossession.

It is therefore

ORDERED, ADJUDGED, AND DECREED, that Beneficial's nonpossessory, nonpurchase money security interest in the Debtors' power drill and power mower is voided pursuant to 11 U.S.C. § 522(f)(2)(A), while the lien on the movie camera, movie projector, hedge trimmer and ½ horsepower boat motor is not avoided.