750 F.2d 628
 11 Collier Bankr.Cas.2d 1024, Bankr. L. Rep. P 70,155
In the Matter of Russell THOMPSON and Dixie A. Thompson,
Engaged in Farming, Debtors.
Petition of Russell THOMPSON and Dixie A. Thompson.
 No. 84-1260.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 9, 1984.
Decided Dec. 5, 1984.
 
 C.R. Hannan, Council Bluffs, Iowa, for debtors.
 Steven H. Krohn, Council Bluffs, Iowa, for creditor.
 Before LAY, Chief Judge, ROSS and McMILLIAN, Circuit Judges.
 LAY, Chief Judge.
 
 
 1
 Bankrupt debtors, Russell and Dixie Thompson, claim a lien avoidance under federal bankruptcy law on certain livestock. The livestock consists of 210 pigs under six months of age and valued at $4,500. The bankruptcy judge, the Honorable Richard Stageman, found in favor of the secured creditor, the Agricultural Production Credit Association (APCA). Judge Stageman ruled that the pigs, although exempt under state law, were not subject to avoidance under federal law. This appeal followed.[1] We affirm the judgment of the bankruptcy court.
 
 
 2
 The Thompsons filed a voluntary petition in bankruptcy under Chapter 11 of the Bankruptcy Reform Act of 1978, 11 U.S.C. Secs. 1101-74 (1982). The Bankruptcy Act gives debtors a choice between a set of federal exemptions and the applicable state exemptions, unless state law prevents the debtor from electing the federal exemptions. See 11 U.S.C. Sec. 522(b) (1982). Iowa has passed legislation that limits its debtors to exemptions available under state law. See Iowa Code Ann. Sec. 627.10 (West Supp.1984). The controlling Iowa law allows a debtor to claim an exemption on all pigs under six months. See Iowa Code Ann. Sec. 627.6(5) (West Supp.1984).
 
 
 3
 Although a state may elect to control what property is exempt under state law, federal law determines the availability of a lien avoidance. See, e.g., In re Wright, 34 B.R. 643 (Bankr.W.D.Ky.1983); Note, Avoiding Liens Under the New Bankruptcy Code: Construction and Application of Section 522(f), 15 U.Mich.J.L.Ref. 577 (1982) (hereinafter cited as Avoiding Liens ). Section 522(f)(2)(A) provides:
 
 
 4
 Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is--
 
 
 5
 * * *
 
 
 6
 * * *
 
 
 7
 (2) a nonpossessory, nonpurchase-money security interest in any--
 
 
 8
 (A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor[.]
 
 
 9
 Section 522(f)(2) was first introduced into the bankruptcy laws in 1978. As the legislative history shows, Congress determined that a lien avoidance provision was necessary to provide debtors with a mechanism by which they could extricate themselves from "adhesion contracts" impairing a "fresh start." Legislators were concerned with creditors who, in loaning money, took security interests in all of a debtor's personal belongings, and then threatened repossession as a means of coercing repayment from frightened debtors. See H.R.Rep. No. 595, 95th Cong., 2d Sess. 126-27, reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 6087-88 (hereinafter cited as 1978 U.S.Code Cong. & Ad.News). Section 522(f)(2) was envisioned as of "significance for the average consumer debtor." 1978 U.S.Code Cong. & Ad.News at 6088. See also United States v. Security Industrial Bank, 459 U.S. 70, 84, 103 S.Ct. 407, 415, 74 L.Ed.2d 235 (1982) (Blackmun, J., concurring) ("[T]he security interest seems to have little direct value and weight in its own right and appears useful mainly as a convenient tool with which to threaten the debtor to reaffirm the underlying obligation * * *.").
 
 
 10
 The bankruptcy judge held that the APCA lien did impair an allowable exemption. The judge further held, however, that the pigs were not "held primarily for the personal, family, or household use" of the debtors. Judge Stageman observed:
 
 
 11
 The debtor is engaged in the business of farming. He is raising livestock on a commercial scale, and it cannot be argued that the livestock or animals are used as pets or for personal slaughter to be consumed by his family. The debtor is asking the court to effectively eliminate the requirement that these items be held for personal, family or household use for the debtor.
 
 
 12
 The hogs of this debtor are a capital business venture, financed as such.
 
 
 13
 In re Thompson, 46 B.R. 1, 2 (Bankr.S.D.Iowa 1984).
 
 
 14
 The Thompsons urge that the pigs were for personal use because some of the animals would have been consumed and some would have been sold to provide income for the Thompsons' "fresh start." The debtors argue that even if all 210 pigs were not subject to avoidance, a small number of pigs should have been avoidable because they were to have been used directly or indirectly for personal consumption. The Thompsons, however, presented no evidence showing that the pigs were not livestock raised as a commercial enterprise. We agree with the creditor that categorizing the pigs as unrealized income does not convert the animals into property used primarily for personal, family, or household use.
 
 
 15
 In a related point, the Thompsons contend that the section 522(f)(2)(A) class of "animals" represents a farmer's unrealized wages and that this class is exempt because such "animal wages" aid in providing a debtor-farmer with a "fresh start." We agree that the debtors' reasoning explains in part the purpose behind federal and state exemption provisions. The federal lien avoidance statute, however, has a different objective than that of the exemption statutes. See, e.g., Sweeney v. Pacific Finance Co., (In re Sweeney ), 7 B.R. 814 (Bankr.E.D.Wis.1980), aff'd on reh'g en banc sub nom. In re Gifford, 688 F.2d 447 (7th Cir.1982). Although Congress was interested in seeing that debtors achieve a fresh start, the primary goal of the lien avoidance statute was to prevent creditors from forcing debtors in bankruptcy to reaffirm consumer debts. Not every item exempt under state or federal law can be avoided under section 522(f)(2). Congress was concerned that a balance be maintained between creditors and debtors. The Bankruptcy Reform Act of 1978 was not intended to be "pro-debtor." See Note, Avoiding Liens, 15 U.Mich.J.L.Ref. at 582. As Justice Blackmun has observed:
 
 
 16
 Section 522(f)(2) permits the debtor to "avoid the fixing" of a nonpossessory, nonpurchase-money security interest in certain property, but the subsection does not extend to all property otherwise exempt * * *. It is limited to certain personal items, such as household furnishings, wearing apparel, jewelry, tools of the debtor's trade, and professionally prescribed health aids.
 
 
 17
 United States v. Security Industrial Park, 459 U.S. 70, 83, 103 S.Ct. 407, 415, 74 L.Ed.2d 235 (1982) (Blackmun, J., concurring) (emphasis added).
 
 
 18
 In conclusion, we hold that only those personal goods necessary to the debtor's new beginning and of little resale value fit the federal bankruptcy philosophy embodied in section 522(f)(2).[2] We concur with the bankruptcy judge that the Thompsons' pigs were not the sort of low value personal goods in which "adhesion contract" security interests are taken. The APCA nonpurchase-money security interest in the 210 pigs is not avoidable under 11 U.S.C. Sec. 522(f)(2)(A) (1982).
 
 
 19
 Judgment affirmed.
 
 
 
 [1]
 The parties consented to a direct appeal from the bankruptcy court to the court of appeals. This court has jurisdiction over the Thompsons' appeal under Pub.L. No. 95-598, title IV, Sec. 405(c)(1)(B), Nov. 6, 1978, 92 Stat. 2685, the Bankruptcy Transition Provisions. The relevant section of the Bankruptcy Transition Provisions was effective between October 1, 1979, and March 31, 1984. This appeal was filed February 22, 1984, over thirty days before the end of the transition period
 
 
 [2]
 As stated by the court in Credithrift of America, Inc. v. Meyers (In re Meyers), 2 B.R. 603, 606 (Bankr.E.D.Mich.1980): "Congress did not intend to place all nonpurchase-money secured loans in jeopardy when the debtor filed a bankruptcy petition. [Legitimate sources of security are] not the kind of collateral that gave rise to the problems with which section 522(f) was concerned."