**In re Lowell E. INDVIK and Melva Indvik, Debtors.**

**In re Eldon INDVIK, Debtor.**

**Bankruptcy Nos. X88–01247M, X88–01246M.**

**Contested Nos. 1172, 1173.**

United States Bankruptcy Court, N.D. Iowa.

July 9, 1990.

---

Peter Riley, Cedar Rapids, Iowa, for debtors.

Larry S. Eide, Mason City, Iowa, trustee.

David L. Davitt, Des Moines, Iowa, for F.D.I.C.

U.S. Atty., Cedar Rapids, Iowa, for FmHA.

## MEMORANDUM OF DECISION AND ORDER RE: OBJECTIONS TO CLAIMS OF EXEMPTION AND MOTIONS TO AVOID LIENS

WILLIAM L. EDMONDS, Bankruptcy Judge.

The matters before the court are creditors' objections to the debtors' claims of exemption and the debtors' separate motions to avoid liens. Debtors in each of the contested matter proceedings were represented by David Smith. David Davitt appeared on behalf of the Federal Deposit Insurance Corporation (FDIC). Assistant U.S. Attorney Martin McLaughlin appeared on behalf of the United States of America acting for the Farmers Home Administration (FmHA). Although these matters have not been consolidated, counsel agreed at the outset of the hearings that these matters could be simultaneously tried as they involve essentially the same or similar facts and the same questions of law. Therefore, the findings of fact hereinafter set out will be set out for each case, but with a joint discussion on the application of law to facts. These are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(B) and (O).

## LOWELL AND MELVA INDVIK; FINDINGS OF FACT

Lowell and Melva Indvik, husband and wife, filed their joint voluntary petition under chapter 12 on August 17, 1988. On the Schedule B–4 filed shortly thereafter, $10,000.00 in "Trade Implements" were claimed as exempt with an itemization provided as Exhibit "A". Items claimed exempt by Lowell Indvik were identified as a 1974 IH 12 Row Cultivator valued at $1,000.00, a 1977 JD 4430 valued at $9,000.00, and a Westco 60″ Auger valued at $1,000.00. Melva Indvik did not claim any farm machinery or equipment as exempt.

On Schedule A–2, Lowell and Melva Indvik listed seven "Creditors Holding Security." The claims of six of these creditors were described as "Partnership Debt." The debt to the seventh, United Mortgage Corp., was described as debt of "Lowell & Melva Indvik." On Schedule A–3, debtors listed seven creditors having unsecured claims. Six of the unsecured claims were explained as "Incurred as Partner; ½ interest Eldon Indvik."

The order for meeting of creditors filed August 22, 1988 directed that the section 341(a) meeting of creditors would be conducted September 19, 1988 and further provided that "Unless extended, objections to debtor(s) claim of exempt property must be filed within 30 days after the section 341(a) meeting."

On October 19, 1988, the FDIC timely filed an objection to the claim of exemption in the farm machinery and equipment. The objection specified two grounds: (1) that the machinery and equipment was owned by a partnership and therefore was not exempt; and (2) that the value claimed as exempt exceeded the allowable values under state law. This latter objection has been waived by FDIC.

FmHA twice sought and received extensions of time to file objections to exemptions. On December 19, 1988, FmHA objected to Lowell's claim of exemption in the farm implements on the ground that the items were partnership property and therefore not exempt to Lowell.

Lowell and Melva Indvik voluntarily converted their chapter 12 case to a chapter 7 case on January 31, 1989. A court order dated January 31, 1989 required new schedules. Debtors filed amended schedules including an amended schedule B–4. In it Lowell and Melva together claimed farm machinery and equipment exempt to the extent of $20,000.00 in value. As the statutory basis for the claim, they cited Iowa Code § 627.6(11). The amended schedules, filed February 16, 1989, provided an itemized list of machinery and equipment showing the full value of each item and the value of the one-half interest claimed to be owned by Lowell and Melva. Certain of the items were marked with an asterisk to identify those items claimed as exempt. The asserted value of debtors' interest in the items claimed as exempt was $19,976.00. The list, which will be set out in its entirety, included the 1974 International Harvester 12 row cultivator, the 1977 John Deere 4430 tractor, and the Westco 60″ auger, all of which were originally claimed as exempt by Lowell Indvik. The values alleged for these three items were less than those originally claimed when the chapter 12 case was filed. This is the debtors' list:

### MACHINERY AND EQUIPMENT

| | Full Value | One–Half Interest |
|---|---|---|
| * Miscellaneous Tools | $ 300 | $ 150 |
| 1974 6600 Combine | 6,500 | 3,250 |
| * 1974 IH 12 Row Cultivator | 700 | 350 |
| 1974 IH 6 Row Cultivator | 250 | 125 |
| 1973 JD Disc | 200 | 100 |
| * 1974 JD Disc | 400 | 200 |
| * 1978 IH Field Cultivator 24′ | 1,600 | 800 |
| * 1971 JD 7′ Mower | 175 | 88 |
| * 1979 12 Row JD Corn Planter | 7,500 | 3,750 |
| 1979 IH 6 Bottom Plow | 3,500 | 1,750 |
| * 1980 JD 30′ Rotary Hoe | 1,500 | 750 |
| * 1978 300 Gal. Sprayer | 275 | 138 |
| * 7 Gravity Wagons & Gears | 4,500 | 2,250 |
| * 1977 JD 4430 | 10,000 | 5,000 |
| 1968 JD 4520 | 6,000 | 3,000 |
| * 1968 JD 3020 | 2,500 | 1,250 |
| JD 2030 (parts) | 100 | 50 |
| * JD 400 Tractor/Backhoe | 4,500 | 2,250 |
| IHC Tractor (parts) | 100 | 50 |
| * Triggs Loader | 300 | 150 |
| HIPCO Heater | 50 | 25 |
| Lundell 13′ Chisel Plow | 375 | 188 |
| Brady 3 pt. Field Cultivator 24′ | 400 | 200 |
| * Lundell Stalk Cutter 6 row | 700 | 350 |
| JD 20′ Grain Table | 400 | 200 |
| * JD 6 row Corn hd. | 4,000 | 2,000 |
| Mayrath Auger | 200 | 100 |
| * Westco 60′ Auger | 1,000 | 500 |
| Wagon Auger | 75 | 38 |

$29,0521 (sic)

By notice to creditors, a new section 341 meeting was scheduled for April 3, 1989. It contained language notifying creditors that the deadline for objecting to claims of exemption was "30 days after the section 341(a) meeting." This notice was served upon all creditors and parties-in-interest. On February 16, 1989, debtors' counsel served the amended schedules on all creditors and parties-in-interest. By May 3, 1989, no objections to the amended claims of exemption had been filed. On June 2, 1989, Lowell and Melva Indvik filed contested matter number 1172 seeking the avoidance of liens on the machinery and equipment. The liens sought to be avoided were those which might be claimed by FDIC, FmHA, Hanseco Insurance Co., and Production Credit Association. The latter two creditors failed to resist the lien avoidance motion. FDIC and FmHA each filed resistances alleging that the property on which lien avoidance was sought was not exempt because it was partnership property.

On November 9, 1989, FDIC filed a renewal of the objections to claims of exemption it had previously filed while the case was pending under chapter 12. On December 6, 1989, FmHA filed an amendment to its resistance to lien avoidance stating as an additional ground of resistance that the debtor, Lowell Indvik, was not engaged in farming and therefore was not entitled to avoid liens on farm machinery and equipment and also alleging that Melva Indvik was never a farmer and therefore was not entitled to lien avoidance.

Lowell Indvik has been a farmer since 1949. He has farmed with his brother Eldon. The brothers have a joint ownership interest in farm land purchased from their parents. In 1985, Lowell Indvik executed several promissory notes to Forest City Bank & Trust Co., the predecessor in interest of FDIC. On each of the notes, the borrower's name was shown as "Indvik Brothers." In the signature area for each of the promissory notes, the name "Indvik Brothers" was typed above the line identified as "Name of Corporation, Partnership or Organization." In 1985, Lowell Indvik alone signed at least ten of these notes and Eldon signed one. Two agricultural security agreements were entered into evidence

(Exhibits B and C) bearing the signatures of both Lowell and Eldon Indvik and identifying the corporation, partnership or organization as "Indvik Brothers." On November 9, 1983, Lowell Indvik signed a document entitled "Agricultural Financial Statement." This was identified, using a check mark, as a "Partnership" financial statement. On April 1, 1958, Lowell and Eldon Indvik executed an "Authority of Partnership to Open Deposit Account and to Procure Loans." This was provided to Forest City Bank & Trust Co. in order to establish a deposit and checking account to be known as "Indvik Bros." The authority provided that checks and orders for payment of money withdrawing funds from the bank account could be signed by either Lowell or Eldon Indvik. The document also stated as follows: "We have also agreed that any and all partnership property may be pledged, transferred or assigned, that money may be borrowed, liabilities incurred and promissory notes, signed and delivered by either Eldon Indvik or Lowell Indvik." Lowell Indvik does not recall having executed this document. Although not introduced into evidence, loan documents and operational plans were submitted to FmHA under the name "Indvik Brothers." Notes to FmHA were signed by Lowell, Eldon and Melva.

Lowell Indvik describes his farming operation with his brother as being "just brothers who farm together." Profits and losses of the farming operation were divided equally between the brothers. Lowell Indvik testified, however, that the use of the name "Indvik Brothers" with the bank was for convenience sake. There was no written partnership agreement between the brothers, and they never filed a partnership tax return either with the Internal Revenue Service or the State of Iowa. Lowell Indvik concedes that the machinery and equipment was owned with his brother, but denies it was property of a formal partnership.

Because of financial difficulties, Lowell Indvik has farmed only sporadically since 1987, a year in which he farmed 100 acres of crop land and in which he tended certain real property enrolled in the conservation reserve program. No crops were planted by Lowell Indvik in 1988 or 1989, and he does not anticipate being able to farm in 1990. However, he believes he will be able to farm in 1991. His inability to farm, he believes, has resulted from financial difficulties, although he maintains a desire and intent to farm in the future.

Melva Indvik has never been substantially involved in the farming operation. She has helped out on the farm by going after parts and operating machinery. This, however, is according to the testimony of Lowell Indvik. According to Melva Indvik's testimony taken by and introduced through deposition, she did not operate equipment, had no involvement in the day-to-day operations of the farm, and conceded it was basically Lowell's and Eldon's operation.

## ELDON INDVIK—FINDINGS OF FACT

Eldon Indvik filed his voluntary petition under chapter 12 on August 17, 1988. On his Schedule B–4, $10,000.00 in "Trade Implements" were claimed as exempt with an itemization provided as Exhibit "A". This itemization listed various items of farm machinery and equipment and identified those claimed by Eldon as exempt in the following manner: "Eldon**". He claimed as exempt a 1979 12 Row JD corn planter valued at $7,500.00 and a 1968 JD 3020 valued at $1,800.00.

On Schedule A–2, Eldon Indvik listed six "Creditors Holding Security." The claims of these six were described as "Partnership Debt." On Schedule A–3, Eldon listed six creditors having unsecured claims. Eldon described those claims as "Incurred as Partner; ½ interest Lowell Indvik."

The order for meeting of creditors filed August 22, 1988 directed that the section 341(a) meeting of creditors would be conducted September 19, 1988 and further provided that "Unless extended, objections to debtor(s) claim of exempt property must be filed within 30 days after the section 341(a) meeting."

On October 19, 1988, the FDIC timely filed an objection to the claims of exemption in the farm machinery and equipment. The objection specified two grounds: (1) that the machinery and equipment was owned by a partnership and therefore was

not exempt; and (2) that the value claimed as exempt exceeded the allowable values under state law. FDIC no longer pursues the excess value issue. After receiving two extensions, FmHA objected to Eldon's claims of exemption in the farm implements on the ground that the items were partnership property not properly claimable as exempt by the individual.

Eldon Indvik voluntarily converted his chapter 12 case to a chapter 7 case on January 31, 1989. A court order dated January 31, 1989 required new schedules. On February 16, 1989, Indvik filed amended schedules including an amended Schedule B-4. The amended schedule B-4 claimed farm machinery and equipment exempt to the extent of $10,000.00 in value. The statutory basis for the claim was Iowa Code § 627.6(11). The amended schedules provided an itemized list of machinery and equipment showing the full value of the items and the value of Eldon Indvik's one-half interest. Certain of the items were marked by an asterisk to identify those items in which a one-half interest was claimed as exempt. The list included the 1979 12 Row JD corn planter and the 1968 JD 3020 tractor which were originally claimed as exempt by Eldon Indvik. The values claimed as exempt for these two items were less than those originally claimed when the chapter 12 case was filed. This is Eldon Indvik's list:

### MACHINERY AND EQUIPMENT

| | Full Value | One-Half Interest |
|---|---|---|
| Miscellaneous Tools | $ 300 | $ 150 |
| 1974 6600 Combine | 6,500 | 3,250 |
| 1974 IH 12 Row Cultivator | 700 | 350 |
| 1974 IH 6 Row Cultivator | 250 | 125 |
| 1973 JD Disc | 200 | 100 |
| 1974 JD Disc | 400 | 200 |
| 1978 IH Field Cultivator 24' | 1,600 | 800 |
| 1971 JD 7' Mower | 175 | 88 |
| * 1979 12 Row JD Corn Planter | 7,500 | 3,750 |
| 1979 IH 6 Bottom Plow | 3,500 | 1,750 |
| 1980 JD 30' Rotary Hoe | 1,500 | 750 |
| 1978 300 Gal. Sprayer | 275 | 138 |
| 7 Gravity Wagons & Gears | 4,500 | 2,250 |
| * 1977 JD 4430 | 10,000 | 5,000 |
| 1968 JD 4520 | 6,000 | 3,000 |
| * 1968 JD 3020 | 2,500 | 1,250 |
| JD 2030 (parts) | 100 | 50 |
| JD 400 Tractor/Backhoe | 4,500 | 2,250 |
| IHC Tractor (parts) | 100 | 50 |
| Triggs Loader | 300 | 150 |
| HIPCO Heater | 50 | 25 |
| Lundell 13' Chisel Plow | 375 | 188 |
| Brady 3 pt. Field Cultivator 24' | 400 | 200 |
| Lundell Stalk Cutter 6 row | 700 | 350 |
| JD 20' Grain Table | 400 | 200 |
| JD 6 row Corn hd. | 4,000 | 2,000 |
| Mayrath Auger | 200 | 100 |
| Westco 60' Auger | 1,000 | 500 |
| Wagon Auger | 75 | 38 |
| | $29,0521 (sic) | |

By notice to creditors, a new section 341 meeting was scheduled for April 3, 1989. The notice contained language notifying creditors that the deadline for objecting to claims of exemption was "30 days after the section 341(a) meeting." This notice was served upon all creditors and parties-in-interest. On February 16, 1989, debtor served his amended schedules on all creditors and parties-in-interest. By May 3, 1989, no objections to the amended claims of exemption had been filed.

On June 2, 1989, Eldon Indvik filed contested number 1173 seeking the avoidance of liens on the machinery and equipment. The liens sought to be avoided were those which might be claimed by FDIC, FmHA, Hanseco Insurance Co., and Production Credit Association. The latter two creditors failed to resist the lien avoidance motion. FDIC and FmHA both filed resistances alleging that the property for which lien avoidance was sought was not exempt because it was partnership property.

On November 9, 1989, FDIC filed a renewal of the objections to claims of exemption it had previously filed while the case was pending under chapter 12. On December 6, 1989, FmHA filed an amendment to its resistance to the lien avoidance motion stating as an additional ground of resistance that the debtor, Eldon Indvik, was no longer engaged in farming and therefore was not entitled to lien avoidance on farm machinery and equipment.

Eldon Indvik has been a farmer since 1949. He has farmed with his brother Lowell. The brothers have a joint ownership interest in farm land purchased from their parents. In 1985, Lowell Indvik executed several promissory notes to Forest City Bank & Trust Co., the predecessor in interest of FDIC. On each of the notes, the borrower's name was shown as "Indvik Brothers." In the signature area of each of the promissory notes, the name "Indvik Brothers" was typed above the line identified as "Name of Corporation, Partnership or Organization." In 1985, Lowell Indvik alone signed at least ten of these notes and Eldon signed one. Two agricultural securi-

ty agreements were entered into evidence (Exhibits B and C) bearing the signatures of both Lowell and Eldon Indvik and identifying the corporation partnership or organization as "Indvik Brothers." On November 9, 1983, Lowell Indvik signed a document entitled "Agricultural Financial Statement." This was identified by a check mark as a "Partnership" financial statement. On April 1, 1958, Lowell and Eldon Indvik executed an "Authority of Partnership to Open Deposit Account and to Procure Loans." This was provided to Forest City Bank & Trust Co. in order to establish a deposit and checking account to be known as "Indvik Bros." The authority provided that checks and orders for payment of money withdrawing funds from the bank account could be signed by either Lowell or Eldon Indvik. The document also stated as follows: "We have also agreed that any and all partnership property may be pledged, transferred or assigned, that money may be borrowed, liabilities incurred and promissory notes, signed and delivered by either Eldon Indvik or Lowell Indvik." Lowell Indvik does not recall having executed this document. Although not introduced into evidence, loan documents and operational plans were submitted to FmHA under the name "Indvik Brothers." Notes to FmHA were signed by Lowell, Eldon and Melva.

Lowell Indvik describes his farming operation with his brother as being "just brothers who farm together." Profits and losses of the farming operation were divided between the brothers on a 50–50 per cent basis. Lowell Indvik testified, however, that the use of the name "Indvik Brothers" with the bank was for convenience sake. There was no written partnership agreement between the brothers, and they never filed a partnership tax return either with the Internal Revenue Service or the State of Iowa. Lowell Indvik concedes that the machinery and equipment was owned with his brother, but denies it was property of a formal partnership.

## DISCUSSION

*Timeliness of Objections to Exemptions*

 Several issues are presented to the court. One is whether the creditors' objec-

tions to debtors' amended claims of exemption were timely filed. Initially, Lowell Indvik and Eldon Indvik claimed exemptions in a limited number of items of farm equipment—Lowell in three items and Eldon in two. FDIC and FmHA each filed timely objections to these claims. Before hearings on the objections, the debtors converted their cases to chapter 7. Debtors amended their claims of exemption after the conversion. Lowell's amendment claimed as exempt his alleged one-half interest in a greater number of items of farm machinery and equipment but including the three items originally claimed. Melva for the first time claimed as exempt an interest in farm machinery and equipment. She claimed the same items claimed by Lowell. Together they claim a one-half interest in the items, the other half allegedly belonging to Eldon Indvik. Eldon Indvik, by his amendment, added one item of equipment to his claim.

The debtors' amendments to their claims of exemption were timely. *Lucius v. McLemore*, 741 F.2d 125, 127 (6th Cir. 1984). Debtors, in accordance with Bankr.R. 1009(a) served notice of the amendment on FDIC and FmHA. Neither of these creditors filed objections to the additional items claimed as exempt by Lowell, the additional item claimed exempt by Eldon, or any of the items claimed exempt by Melva. Because of the amendments, creditors had an additional 30 days to file objections to the list of property claimed as exempt in each case. Bankruptcy Rule 4003(c) allows creditors an additional 30 days from the schedule's amendment. However, in this case, a notice setting the chapter 7 meeting of creditors arguably provided 30 days from the conclusion of that meeting. Regardless of which of the conflicting time periods applies, no creditor filed objections within it. Because FmHA and FDIC failed to file timely objections to the additional items, their objections to those items are untimely. Where there is a failure to object, items claimed as exempt are exempt pursuant to 11 U.S.C. § 522(*l*).

The creditors argue that because of their earlier and timely filed objections on the

same ground, debtors had actual notice of the objections of the creditors and are therefore not prejudiced by objections filed outside of the time period provided by Rule 4003. The creditors' briefs have cited several cases in which courts have declined to disallow late-filed objections as untimely. The court has read them, and either declines to follow them or finds them distinguishable.

The first distinguishable case is *Liberty State Bank and Trust v. Grosslight (Matter of Grosslight)*, 757 F.2d 773 (6th Cir. 1985). Although the creditor in this case failed to file "objections to exemptions," it had filed an adversary proceeding within which it lodged objections to debtor's claim of exemptions. It was filed within the period provided for objecting to exemptions. The Sixth Circuit Court found the objections to be timely although the creditor had not followed the correct procedure. *Id.* at 777. This court does not disagree with that ruling, but its facts make it inapposite to this case. There is no evidence that prior to the deadline for creditors' objections to the amended claims of exemption, FDIC or FmHA took any action by way of an adversary or contested matter proceeding to object to the debtors' new claims.

The second distinguishable case is *Woodson v. Fireman's Fund Insurance Co. (In re Woodson)*, 839 F.2d 610 (9th Cir.1988). The Ninth Circuit Court refused to disallow an exemption objection on the ground of timeliness because debtor had failed to serve the amended claim of exemption upon the creditor. *Id.* at 615. This court does not disagree with that ruling. There is no evidence, however, in the cases before the court that Indviks failed to serve the amendments upon the objecting creditors. The evidence is that they did.

Also distinguishable is *In re Starns*, 52 B.R. 405 (S.D.Tex.1985). It is similar to *Grosslight*. Actual notice by other proceedings was held to be a substitute for a formal objection to exemptions. The district court ruled that although the creditor had failed to file a formal objection to the exemption claim, it had timely raised the exemption issue by filing a motion for relief from stay well before the deadline for objecting to exemptions. *Id.* at 410.

The fourth case is *Young v. Adler (Matter of Young)*, 806 F.2d 1303 (5th Cir.1987). The Court of Appeals affirmed a bankruptcy court ruling denying debtor's claim of exemption in an annuity contract. Although the trustee's objection to the exemption was filed 44 days after debtor's amendment claiming the annuity as exempt, the court reasoned that the debtor had listed the asset and claimed it exempt in direct response to turnover motions by the trustee. The court said that the trustee, by his turnover motions, had effectively complied with Bankr.R. 4003(b) *prior to* debtor's amendment.

This court respectfully disagrees with that ruling. The decision is too liberal in its reading of what constitutes an objection to exemptions. When the trustee sought to obtain possession of an unscheduled asset by turnover motions, the debtor's response was to amend his schedules listing the asset and claiming it as exempt. Debtor's action should have triggered an objection to exemption by the trustee. Assuming the trustee was served with the amendment to exemption, the prior turnover motion should not have been considered the equivalent of an objection to exemption. The court declines to follow the *Young* ruling in the present case.

The court also declines to follow *Geekie v. Owen (In re Owen)*, 74 B.R. 697 (Bankr. C.D.Ill.1987), which is similar to *Young* and relies on it. In that case, debtors, after conversion to chapter 7, filed an amended schedule B–4 claiming a homestead exemption. The co-debtor husband was not a titleholder of the homestead property, although his co-debtor spouse was. A new meeting of creditors was not held after the chapter 7 conversion, and the trustee failed to file a formal objection to the amendment within 30 days after its filing. Thirty-seven days after the exemption amendment, the trustee filed a complaint seeking to sell the homestead property free and clear of liens and seeking a determination of rights in the proceeds including claims in them by virtue of homestead. The Illinois per per-

son homestead exemption was limited to $7,500.00. The bankruptcy court ruled that the husband-debtor had notice of the trustee's objection to his homestead exemption by virtue of the complaint to sell. *Id.* at 698. This was so despite the fact that the complaint to sell was not filed until more than 30 days after the amended homestead claim. In denying the husband's homestead claim to $7,500.00 in the proceeds of sale, the court also noted that since the husband had no title to the homestead property, as a matter of law, he could not claim it as exempt under Illinois law. *Id.* at 699. This court disagrees with the timeliness ruling in *Owen* because it ignored the timing of the trustee's complaint to sell.

FDIC and FmHA argue that because they objected to the initial claims of exemption on the basis of ownership, debtors were on notice of their position and that therefore their failure to file objections to the amended claims was not prejudicial to the debtors. Such an argument treats all of the farm implements and equipment as the same. This is an unwarranted presumption. Because creditors have objected to the exemption of five pieces of equipment on ownership grounds, it does not permit them to ignore the time limit for objecting to additional items not previously claimed. Whether an item claimed exempt is property of the debtor or is partnership property, is an objection which must be raised on an item-by-item basis.

*Timeliness and Facial Invalidity*

■ FmHA raises the issue of whether untimeliness should matter under circumstances where a debtor claims as exempt property which cannot be exempt as a matter of law. This "exemption by declaration" issue was raised in *In re Bennett,* 36 B.R. 893, 895 (Bankr.W.D.Ky.1984). That case, like subsequent ones, have ignored the timeliness of objections where debtor's claim of exemption has been facially invalid. *In re Stutterheim,* 109 B.R. 1006, 1008 (Bankr.D.Kan.1988), *aff'd,* 109 B.R. 1010 (D.Kan.1989) (and cases cited therein); *In re Frazier,* 104 B.R. 255, 257 (Bankr.N.D. Cal.1989); *In re Rollins,* 63 B.R. 780, 783–84 (Bankr.E.D.Tenn.1986).

It is not necessary to decide that issue in this case. Where the debtor's claim of exemption is not facially invalid, an untimely objection should not be permitted. *See In re Frazier,* 104 B.R. 255, 258 (Bankr.N. D.Cal.1989) and *Munoz v. Dembs (Matter of Dembs),* 757 F.2d 777, 780 (6th Cir.1985). Here, Indviks' claims to the farm implements and machinery cannot be said to be facially invalid. Where a court must take evidence and make factual determinations to decide if an exemption is allowable under state law, the claim cannot be said to be facially invalid. In the present case, creditors raise the issue of whether the property is partnership property or personal property of the debtors. FmHA also raises the issue of whether debtors are farmers entitled to claim the machinery and equipment as exempt. Neither of these issues could be determined in this case without evidence and factual determinations. Therefore, this court need not decide whether the facial invalidity of a claim of exemption permits the court to ignore the late filing of an objection. In this case, such a rule would not apply.

■ The creditors' objections to machinery and equipment exemptions were timely in each case as to the initial items claimed exempt but were untimely as to those items claimed in the amendment. The issue of ownership is implicit in the exemption question and therefore may not be raised for the first time in the lien avoidance action. *In re Koster,* No. 86–02765C, Cont. No. 70677, slip op. at p. 10 (Bankr.N. D.Iowa, July 23, 1987).

Because of the creditors' failure to file timely objections, the following items of machinery and equipment are exempt to Lowell and Melva Indvik:

| Item | Debtors' Interest |
| --- | --- |
| Miscellaneous tools | $ 150.00 |
| 1974 JD Disc | 200.00 |
| 1978 IH Field Cultivator 24' | 800.00 |
| 1971 JD 7' Mower | 88.00 |
| 1979 12 Row JD Corn Planter | 3,750.00 |
| 1980 JD 30' Rotary Hoe | 750.00 |
| 1978 300 gal. Sprayer | 138.00 |
| 7 Gravity Wagons and Gears | 2,250.00 |
| 1968 JD 3020 | 1,250.00 |
| JD 400 Tractor/Backhoe | 2,250.00 |
| Triggs Loader | 150.00 |
| Lundell Stalk Cutter, 6 Row | 350.00 |
| JD 6 Row Cornhead | 2,000.00 |

Because of the creditors' failure to object to the amended claim of exemptions of Eldon Indvik, the 1977 JD 4430 is exempt at a value of $5,000.00. These items are exempt to these debtors pursuant to I.C. § 627.6(11)(a).

■ Because the partnership issue was timely raised as to debtors' initial claims, it was not necessary for the creditors to renew those objections when the same items were claimed as exempt in the amendment. *See In re Payton,* 73 B.R. 31, 33 (Bankr.W. D.Tex.1987).

### The Partnership Issue

■ Iowa law defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit." I.C. § 544.6(1). The creation of a partnership under Iowa law requires (1) an association with an intent by the parties to associate as partners, (2) a business, (3) earning of profits, and (4) co-ownership of profits, property and control. *Chariton Feed and Grain, Inc. v. Harder,* 369 N.W.2d 777, 785 (Iowa 1985). The intention to associate as partners is the "crucial test." *Id.* at 785. "Evidence of an intent to associate may include a partnership name, a partnership bank account, partnership tax returns, and a division of profits and losses." *In re Waters,* 90 B.R. 946, 955 (Bankr.N.W.Iowa 1988). The agreement between the parties must be one to divide losses as well as profits. *Berry Seed Co. v. Hutchings,* 247 Iowa 417, 74 N.W.2d 233, 239 (1956).

■ The burden of proof is on the objecting creditors to show the items initially claimed exempt are partnership property. Bankr.R. 4003(c). There is evidence on both sides of the issue. There was no written partnership agreement nor did the brothers file federal or state partnership tax returns. Lowell testified that the brothers had no intention of becoming partners but merely used the "Indvik Brothers" name out of convenience. The brothers did, however, agree to share profits and losses equally. Each of the brothers signed a document (plaintiffs' Exhibit E) entitled "Authority of Partnership to Open

Deposit Account and to Procure Loans." In that document, Indvik Brothers was described as the trade name which was to be used by the partnership of Eldon and Lowell Indvik. Subsequent loan documents with Forest City Bank & Trust were executed using "Indvik Brothers" as the name of the artificial entity borrowing money. An agricultural security agreement executed November 9, 1983 (exhibit F) identifies the document as a partnership financial statement. If the brothers did not believe themselves to be partners, they should have disavowed such documents in dealing with the bank. Also telling of the intent of the brothers are the schedules filed in their chapter 12 cases. Schedule A–2 lists numerous debts as "partnership debt."

Based on the evidence, the court concludes that Indvik Brothers was a partnership, and the personal property initially claimed as exempt by Eldon and Lowell Indvik was partnership property.

■ Even if the court were to find that a partnership did not exist, the court would conclude that the brothers are estopped from denying the existence of the partnership. *In re McDonald's Estate,* 167 Iowa 582, 149 N.W. 897, 899 (1914). A person may be estopped to deny a partnership when he holds himself out as a partner or permits someone else to do so and thus induces a third party to extend credit or otherwise act to his detriment. *Arbie Mineral Feed Co. v. Nissen,* 179 N.W.2d 593, 595 (Iowa 1970). Loan documents submitted to Forest City Bank & Trust, FDIC's predecessor, indicated the existence of a partnership. Although the documents submitted to FmHA were less conclusive, they nonetheless bore "Indvik Brothers" as the name of the borrower.

■ As a partner, neither Lowell Indvik nor Eldon Indvik may claim as exempt their partner's rights in specific partnership property. Iowa Code 544.25(2)(c). There can be no individual ownership in partnership property until the partnership has ceased all activity and all partnership debts have been paid. *Brindle v. Hiatt,* 42

F.2d 212, 213 (8th Cir.1930) (citing *Jensen v. Wiersma,* 185 Iowa 551, 170 N.W. 780 (1919)). *See also Dixon v. Koplar,* 102 F.2d 295, 297 (8th Cir.1939).

The court concludes that the following items of personal property, in which Lowell Indvik claims an undivided one-fourth interest, may not be claimed as exempt because the items are owned by a partnership entity or alternatively Lowell Indvik is estopped to deny their ownership by a partnership entity: a 1974 IH 12–row cultivator; a 1977 JD 4430, and a Westco 60″ auger.

██ The court concludes that the following items of personal property, in which Eldon Indvik claims an undivided one-half interest, may not be claimed as exempt by Eldon Indvik because they are property of a partnership entity or alternatively Eldon Indvik is estopped to deny they are property of a partnership entity: a 1979 12–row JD corn planter and a 1968 JD 3020.

### LIEN AVOIDANCE

Lowell and Melva Indvik and Eldon Indvik seek to avoid the liens of FDIC and FmHA in the property claimed and now allowed by this court as exempt. As to those items found not to be exempt, lien avoidance may not be obtained by the debtors. 11 U.S.C. § 522(f).

As to those property interests which the court has found to be exempt, each debtor

> may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is

> . . . . .

> (2) a non-possessory, nonpurchase-money security interest in any

> . . . . .

> (B) implements ... or tools of the trade of the debtor....

11 U.S.C. § 522(f)(2)(B).

The court has already concluded that certain property claimed as exempt by Lowell and Melva and by Eldon in their amended claims of exemption is exempt pursuant to

11 U.S.C. § 522(*l*). That the creditors' liens are nonpossessory, nonpurchase money liens and that they impair the exemptions are not disputed. The remaining issue is whether the exempt items are implements or tools of each debtor's trade. Debtors argue that because FmHA and FDIC did not timely file objections to the amended claims of exemption, they may not now raise the issue of whether these items are tools or implements of the debtors' trades.

FmHA counters that despite the exempt status of the personalty, debtors still must prove that the property is tools or implements of their trade. Since 1981, it has been the rule in this court that a creditor, having failed to object to a debtor's claim of exemption, may not object to the claim of exemption in defense of the lien avoidance motion. *See In re Grethen,* 14 B.R. 221 (Bankr.N.D.Iowa 1981). In that case, the court denied a creditor the opportunity to file late objections to exemptions after the debtor had filed lien avoidance motions as to the exempt property. The items claimed as exempt in that case were farm machinery and equipment. That case does not tell us, however, which underlying factual issues of the exemption question are precluded in subsequent lien avoidance actions.

██ Failure to object to an exemption will preclude a creditor from raising ownership issues as to the exempt property in defense of a lien avoidance motion. Valuation of the exempt property may not be raised in defense of a lien avoidance motion if it has not been raised by an objection to exemption. *Matter of Towns,* 74 B.R. 563, 566–67 (Bankr.S.D.Iowa 1987).

██ But just because property is exempt, lien avoidance does not follow automatically. An item might be exempt under state law, yet it may not be an item susceptible to lien avoidance under federal law. *Matter of Thompson,* 750 F.2d 628, 630 (8th Cir.1984).

There are many items exempt under Iowa law as to which liens may not be avoided under § 522(f)(2). These include

an interment space (Iowa Code § 627.6(4)), life insurance interests (Iowa Code § 627.6(6)) and tax refunds (Iowa Code § 627.6(11)(c)). There are also items exempt under state law which may be, but are not necessarily, the subject of such lien avoidance—firearms (Iowa Code § 626.6(2)) and a motor vehicle (Iowa Code § 627.6(9)(b)).

The descriptions of many items in the general Iowa exemption statute is substantially the same as the descriptions in 11 U.S.C. § 522(f)(2), (A) and (C). The language of the Iowa statute exempting farm equipment and the federal lien avoidance statute on tools of the trade are not exactly the same. Iowa law exempts to debtors "engaged in farming" those "implements and equipment reasonably related to a normal farming operation." Iowa Code § 627.6(11)(a). Under 11 U.S.C. § 522(f)(2)(B), debtors may avoid liens on "implements . . . or tools, of the trade of the debtor. . . ."

The tests for determining whether a tool or implement is exempt to a farmer and whether a farmer may avoid liens on the tool or implement are substantially the same. As to the exemption question, "[t]he proper inquiry in each case is to determine whether the items are the proper implements in the reasonable conduct of the debtors' trade or profession." *Matter of Eby*, 76 B.R. 140, 141 (Bankr.S.D.Iowa 1987) (citing *Hoyer v. McBride*, 202 Iowa 1278, 211 N.W. 847, 848 (1927)).

In determining whether a farmer may obtain lien avoidance on a tool or implement, the proper inquiries are (1) whether the tools or implements are commonly understood to be farm tools or implements, and (2) whether they are commonly used by persons employed in the debtor's trade. *Middleton v. Farmers State Bank of Fosston*, 41 B.R. 953, 955 (D.Minn.1984) (approved by the Eighth Circuit in *P.C.A. of St. Cloud v. LaFond (In re LaFond)*, 791 F.2d 623, 626–27 (8th Cir. 1986)).

While the language of the state and federal statutes is not identical, this court believes the tests are substantially the same and that if an item is exempt as a farm tool or implement under Iowa Code § 627.6(11)(a), the item is also a tool of the trade under 11 U.S.C. § 522(f)(2)(B).

The foregoing tests do not aid in answering whether the debtor is "engaged in farming" under Iowa law or the nature of his trade under federal law. But again, the tests are substantially the same. To claim the items exempt under Iowa law, the debtor must be "engaged in farming." To obtain lien avoidance on the exempt items, the debtor must show the items are implements or tools of his trade. To be a farmer, for exemption purposes, a person does not need to be farming on the day of a levy. A temporary cessation of farming activity does not defeat the claim of exemption if the debtor intends to resume farming. *Pease v. Price*, 101 Iowa 57, 69 N.W. 1120 (1897); *Hickman v. Cruise*, 72 Iowa 528, 34 N.W. 316, 317 (1887). In determining whether a debtor is engaged in a farm trade for lien avoidance purposes, the court must examine the debtor's past farming activities and the sincerity of the debtor's intention to continue farming. *In re LaFond*, 791 F.2d at 626 (citing *Middleton v. Farmers State Bank*, 41 B.R. at 955). The court concludes that if the debtor is engaged in farming under Iowa exemption law, then he is engaged in a trade for lien avoidance purposes.

The question before the court, however, is whether a debtor, having had personal property deemed exempt under Iowa law pursuant to 11 U.S.C. § 522(*l*), still must prove an entitlement to lien avoidance under 11 U.S.C. § 522(f) by showing the items to be tools or implements of his trade.

The debtor seeking lien avoidance has the burden of proof on all issues. *See Flick v. U.S.*, 47 B.R. 440, 443 (W.D.Pa. 1985). The question is one of issue preclusion. The entitlement to an exemption under state law and the entitlement to avoid liens on the exempt property are separate questions. The items claimed as exempt by the debtors, to the extent allowed by this decision, are now determined. It was the

responsibility of creditors to object and absent objections, the property is deemed exempt. If there had been objections, the burden of proof would be on the objecting party to show the property is not exempt. Bankr.R. 4003(c). That the property on which lien avoidance is sought is deemed exempt does not relieve the debtor of his burden of proof on the issue of whether the exempt items are tools of the trade, despite this court's conclusion that meeting the test for exempting farm equipment would also meet the requirements of the tools of the trade requirement for lien avoidance under federal law. The question then is whether the debtor can meet his burden of proof on the tools of the trade requirement by the use of issue preclusion. The doctrine of issue preclusion or collateral estoppel prevents "relitigation of a particular dispositive fact which was necessarily or actually decided with finality in a previous suit involving at least one of the parties on a different cause of action." *Gear v. City of Des Moines,* 514 F.Supp. 1218, 1220 (S.D. Iowa 1981). There are four necessary criteria to the application of the doctrine:

(1) the issue sought to be precluded must be the same as that involved in the prior litigation;

(2) that issue must have been actually litigated;

(3) it must have been determined by a valid and final judgment; and

(4) the determination must have been essential to the judgment.

*Lovell v. Mixon,* 719 F.2d 1373, 1376 (8th Cir.1983); *U.S. v. Rosenberger,* 872 F.2d 240, 242 (8th Cir.1989).

Not all of the criteria of issue preclusion are present in the Indvik cases. The issue is the same. As the court has previously stated, whether the tools and implements are those of debtors engaged in farming and whether the tools are tools of the trade of the debtors are in this case the same issue. Although the failure of the creditors to object did not result in a "judgment" of exemption, the result was the same—the tools and implements were exempt. That the tools and implements were tools of the debtors' trade—farming—was essential to the claim of exemption. The difficulty lies in that the issue was not actually litigated. The property is exempt under 11 U.S.C. § 522(*l*) because the debtors claimed the property as exempt and no creditor objected. There was no litigation precipitated by the mere claim of exemption. It is not until there is objection to the claims of exemption that a contested matter proceeding arises.

The incentive to object to exemptions by a secured creditor is not necessarily the same as the incentive for an unsecured creditor. If property is claimed as exempt and there is no objection, the property is removed from the estate. It cannot be liquidated by the trustee, and thus proceeds of liquidation are not available for payment of costs of the estate or for distribution to unsecured creditors. A claim of exemption in and of itself does not avoid valid liens against the exempt property. Various procedural devices exist to remove or determine liens against property of the debtor or the estate. These include motions to avoid liens under § 522(f), lien avoidance motions under § 506(d), and adversary proceedings to determine the validity or extent of a lien pursuant to Bankr.R. 7001(2). It is not required that the debtor initiate these proceedings. If the debtor does not, the exempt property will remain subject to the lien. The exemption of property from the estate may have benefits to the debtor regardless of whether lien avoidance is sought. This would be so where an asset fully exemptible from the estate has a value greater than the lien claims against it. Because the exemption of property from the estate does not in and of itself avoid liens upon the property, it is not offensive that the exemption of the property from the estate can be accomplished by the claim of the exemption and the running of the time for objection without objections being filed. 11 U.S.C. § 522(*l*); Bankr.R. 4003(b).

Lien avoidance, however, extinguishes the property rights of a creditor. It is contemplated that such avoidance shall be sought by a motion which creates a contested matter under Bankr.R. 9014. The latter rule requires the service of the mo-

tion upon the creditor pursuant to Bankr.R. 7004. It is by lien avoidance motion that the secured creditor stands to lose property rights. In this court's view, the creditor should not enter the litigation already having lost a critical issue because the creditor failed to object to the claim of exemptions even though the creditor may not have been interested in whether the property is exempt. The creditor may not challenge the exemption, but this does not absolve the debtor from having to prove that the exempt property is appropriate property for lien avoidance under § 522(f)(2)(A)–(C). If the debtor is unable to prove the property is appropriate for lien avoidance, that does not inure to the benefit of the unsecured creditors. The property will remain exempt although impressed with the unavoided lien. This may be of no help to the debtor if the property is fully encumbered, but may be a significant benefit if it is not.

Nor does the court believe that requiring the debtor to meet his burden of proof as to lien avoidance will necessarily create multiplicity in litigation, a concern of some courts. If the property is fully encumbered, it is doubtful that unsecured creditors in general will object to the exemption. Therefore, in all likelihood, there will only be one contested matter proceeding, that seeking lien avoidance. If the property claimed as exempt is worth more than the amount of the lien and objections to the exemption are filed, those can be litigated before the debtor determines whether to file the lien avoidance. If the debtor loses on the claim of exemption, there is no further litigation. If the debtor successfully litigates his exemption claim and desires lien avoidance, a second proceeding will be necessary. Unless the lien claimant was a party to the exemption litigation, the debtor may have to prove some facts a second time. The court admits this duplication may be unavoidable under this ruling, but believes it is a small price to pay for providing due process to the creditor whose property right may be taken. The court, therefore, concludes that although property may be exempt to the debtor pursuant to § 522(*l*), the debtor may not use the exempt status of the property as proof by preclusion that the exempt property is appropriate property for lien avoidance. This court is not alone in this view. For various reasons, two others court have reached the same conclusion. *In re Frazier*, 104 B.R. 255, 258–59 (Bankr.N.D.Cal.1989); *In re Montgomery*, 80 B.R. 385 (Bankr.W.D.Tex. 1987).

■ The burden of proof is on the debtors to show that they are engaged in farming and that the property on which lien avoidance is sought are tools and implements of their farm trade. FmHA does not dispute that the items in question are farm tools and implements. The only issue in question is whether the debtors are farmers. Melva Indvik claims certain items as tools of the trade of farming. Melva Indvik is not a farmer. It has previously been held by this court that a farmer's wife is a farmer for the purposes of claiming *exemptions* if the wife works on the farm and her work is essential to its operation. *In re Schmitt*, 56 B.R. 708, 711 (Bankr.N.D.Iowa 1986). The evidence in this case is that Melva Indvik made no essential contribution to the farm. Her deposition testimony was as follows:

Q. The question I have for you is how involved are you in the day-to-day operations on the farm or were you?

A. I had no involvement.

Deposition of Melva Indvik (Exhibit G, p. 4, lines 7–10). There was some testimony that Melva Indvik ran errands to pick up parts, but this is not the type of involvement which standing alone would lead this court to believe that Melva Indvik is a farmer. The court, therefore, concludes that Melva Indvik is not entitled to lien avoidance on the tools and equipment claimed exempt by her.

■ The evidence in favor of Lowell's motion is much more substantial. He has been a farmer of long standing. It is apparently the position of FmHA that the Indviks had ceased their farming activity and therefore were not farmers at the time of the bankruptcy. The evidence is that Lowell last actively farmed in 1987 but that he did not plant crops in 1988 and 1989 and

he does not anticipate being able to farm in 1990. He says his inability to farm has been the result of his financial difficulties, but that he has a desire and intent to farm in the future. The court finds his testimony credible. Although the debtor has not farmed since 1987, he has been involved in bankruptcy since the filing of his case in 1988. It is not unreasonable to expect that where a debtor and his land, machinery and equipment are involved in a bankruptcy case, the bankruptcy proceedings will inhibit his ability to farm despite his desires. Based on the debtor's experience in farming since 1949, the court has no reason to doubt his sincerity or the reasonableness of his intention to farm in the future. *In re Richardson*, 47 B.R. 113, 119 (Bankr.W.D. Wis.1985). The court, therefore, concludes that the tools and implements exempt to Lowell Indvik are tools of his trade upon which the liens of the creditors may be avoided.

 Eldon Indvik did not testify. Despite the close farming relationship between the brothers since 1949, there was no testimony by Lowell that he and his brother would continue farming or that Eldon desired to. Moreover, there was no testimony as to the farming activity of Eldon at the time of the filing of the bankruptcy case. Because of a lack of evidence in support of Eldon's lien avoidance motion, his motion to avoid liens must be denied.

## CONCLUSIONS OF LAW

1. Melva Indvik may not avoid the liens of FmHA, FDIC, Hanseco Insurance Co., or Production Credit Association on her exempt machinery and equipment because such exempt machinery and equipment are not implements or tools of her trade pursuant to 11 U.S.C. § 522(f)(2)(B).

2. Eldon Indvik may not avoid the liens of FmHA, FDIC, Hanseco Insurance Co., or Production Credit Association on his exempt machinery and equipment because such machinery and equipment are not tools or implements of his trade under 11 U.S.C. § 522(f)(2)(B).

3. The liens of FmHA, FDIC, Hanseco Insurance Co., and Production Credit Association in the exempt interest of Lowell Indvik in machinery and equipment may be avoided as such machinery and equipment are tools and implements of the debtor's trade under 11 U.S.C. § 522(f)(2)(B).

## ORDER

IT IS ORDERED that the lien avoidance motion of Melva Indvik is denied.

IT IS FURTHER ORDERED that the lien avoidance motion of Eldon Indvik is denied.

IT IS FURTHER ORDERED that the lien avoidance motion of Lowell Indvik is granted in part and denied in part. As to Lowell Indvik's interest in the following property, the liens of FmHA, FDIC, Hanseco Insurance Co., and Production Credit Association are avoided:

miscellaneous tools; 1974 JD disc; 1978 IH field cultivator 24′; 1971 JD 7′ mower; 1979 12–row JD corn planter; 1980 JD 30′ rotary hoe; 1978 300–gallon sprayer; 7 gravity wagons and gears; 1968 JD 3020; JD 400 tractor/backhoe; Triggs loader; Lundell stalk cutter, 6 row; JD 6–row corn head.

IT IS FURTHER ORDERED that as to the exempt interest of Lowell Indvik in a 1974 IH 12–row cultivator, a 1977 JD 4430, and a Westco 60″ auger, the lien avoidance motion of Lowell Indvik is denied. Judgment shall enter accordingly.

SO ORDERED.